*June Term*, 1842.

STEPHEN L. LEE *vs*. THOMAS N. PINDLE AND EMELINE HIS WIFE AND OTHERS.—*June Term*, 1842.

After an appeal taken from an order of the Court of Chancery, and dismissed by this court, the cause was again brought to the notice of the Chancellor by petition for further proceedings; it is then in the same situation as if no appeal had been taken.

The principle is settled, that chancery will not, on further directions, decide a question, not reserved by the original decree.

But in a decree for the sale of negroes, to warrant the court in granting full and complete relief for their hire and annual value, as prayed by the bill, it is not necessary to reserve any equity for further directions as to those subjects.

Neither does this general rule prevent the court from giving interest on further directions, though the question of interest was not reserved by the decree.

Where it is necessary to determine the value of the hire of negroes, by an average of opinions, the estimates of those who did *not* know the negroes, ought not to be mixed up with, and allowed equal weight and influence with the valuations of those who did know them, and who testified from such their personal knowledge.

In making such estimates, proper allowances ought also to be made for the expense of maintaining and clothing the whole, as well those incapable of labor, as those able to work; and the hire of those killed by accident, ought not to be carried further than the day of the death.

Interest may be charged on the annual hire of negroes or value of their services, where it constitutes a debt, from the time it becomes due and payable

A will and codicil are to be construed together as one instrument, and are to be reconciled as far as practicable; but if there be any conflict or repugnancy between them, the codicil, as the last indication of the testator's mind, must operate in preference to the will.

The testator having by his will declared as follows: "*Item.*—Considering "the term of six years after my decease, ample and sufficient time out of the profits of my estate bequeathed to my wife *Elizabeth Lee*," (to whom he had previously bequeathed for life the chief part of his slaves,) "to pro-"vide for the payment and discharge of all my just debts, and *to pay off* "*the legacies hereinbefore bequeathed;*" afterwards, by a codicil, revoked "the bequest of any of my slaves as made in my will, but will and direct, that the whole of my slaves remain in the possession of my wife during her life, for the benefit of her and my children, in common, in working and cultivating the lands and premises whereon I now reside, for the purpose as heretofore set forth in my will; and after her decease, the same shall be equally divided among my children, that is to say, naming them: HELD, that by the codicil the slaves were given to the widow for life, and at her death to the children named therein, and that the pecuniary legatees under the will, and the personal representatives of the widow could not be affected by the decree in this cause, and were not therefore necessary parties. From the death of the widow, the hire and profits of the negroes ceased to be a fund for the payment of legacies.

Neither were the legatees of the slaves, under the codicil, obliged to await the expiration of the six years before they could claim the negroes and their hires. Their rights attached immediately upon the death of the widow.

Costs in chancery are in the discretion of the court.

Where an executor interposes no improper obstacles to the ascertainment of the right to property, found in the possession of his testator, the costs are properly chargeable on the fund; but if, in the progress of a cause, he changes his conduct, and offers untenable and vexatious grounds of defence, equity may award costs against him upon the final decree.

Under the bill in this cause, the distributive share of each legatee should have been liquidated and finally settled by the decree, so as to prevent all future controversy and litigation upon the subject; and it was error to stop the account for hires and profits at a period anterior to the sale, reserving directions for a further account from such period to the day of sale, when that should in fact take place.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 2nd December, 1837,

by *T. N. Pindle and wife*, praying subpœna against the executors of *Stephen Lee, Elizabeth Ann Lee*, the appellant, and others. The object of the bill was to procure a distribution of certain slaves, devised by *Stephen Lee* to his wife for life, remainder to certain of his children, possessed by the appellant at the death of his mother, and for an account of profits and increase.

With the bill, the will of *Stephen Lee* was filed, which is as follows :

I, *Stephen Lee*, of, &c., do make and constitute this my last will :

*Item.*—I give and bequeath to my affectionate wife, *Elizabeth Lee*, the whole of my estate, real and personal, of every description, to be held by her for the benefit and maintenance and support of my family, under age, at the time of my decease, during her life or widowhood, but that no part thereof shall be subject or liable to the payment of any debts to be contracted by her ; but at her demise, or in the event of her marriage, I then give and bequeath as follows, to wit :

*Item.*—I give and bequeath to my son, *Stephen Lewis Lee*, the plantation on which I now reside, to him and his heirs, in fee simple, provided, &c.

*Item.*—I give and bequeath unto my said son, *Thomas Daniel Lee*, my two tracts of land on, &c.

*Item.*—I give and bequeath to my said son, *Stephen Lewis Lee*, one negro man, to be selected by him, &c., giving to him the right of first choice.

*Item.*—I give and bequeath to my son, *Thomas Daniel Lee*, one negro man, to be selected by him, having the right of second choice.

*Item.*—I give and bequeath to my son, *Stephen Lewis Lee*, my large fowling piece, and the second choice of my two small guns, one feather bed, bedstead and furniture, and my black horse.

*Item.*—I give and bequeath to my son, *Thomas Daniel Lee*, my two muskets, and the choice of my two small guns, and one feather bed, bedstead and furniture.

*Item.*—It is my will and desire, that each of my daughters reside with their mother, during their single lives, to be supported, at her discretion, out of the proceeds of the whole estate bequeathed to my wife, as before mentioned, and that the same be considered as given to her for that purpose.

*Item.*—I give and bequeath unto my daughter, *Susan Bird,* and two sons, *John Lee and Edward Lee,* and to each of them, five hundred dollars, to be paid to them and each of them, their heirs or assigns, at the expiration of six years after my decease, without interest; but should the said legacies not be punctually paid at the expiration of six years, as above mentioned, then, and in that case, the same shall bear legal interest until paid.

*Item.*—I give and bequeath to my daughters, *Elizabeth Lee, Louisa Mackall Lee, Emeline Priscilla Lee, Rachel Maria Lee and Margaret Johns Linthicum,* the whole of my household furniture, not hereinbefore bequeathed, to be equally divided between them, share and share alike.

*Item.*—The balance of my property, not hereinbefore bequeathed, of whatever nature or kind the same may consist, I give and bequeath to my daughters, *Margaret Johns Linthicum, Elizabeth Ann Lee, Louisa Mackall Lee, Emeline Priscilla Lee and Rachel Maria Lee,* to be equally divided between them.

*Item.*—In case *Stephen Lewis Lee* or *Thomas Daniel Lee,* or either of them, should die without lawful issue, it is my will, that the property hereinbefore bequeathed to them in this my will, shall go to my daughters, hereinbefore mentioned, share and share alike.

*Item.*—I give and bequeath to my son, *Benjamin Lee,* two hundred and fifty dollars, to be paid to him on the same terms, as before mentioned, of the legacies of five hundred dollars each, to *Susan Bird, John Lee and Edward Lee.*

*Item.*—Considering the term of six years after my decease ample and sufficient time to provide, out of the profits of my estate, bequeathed to my wife, *Elizabeth Lee,* to provide for the payment, and discharge of all my just debts, and pay off the legacies hereinbefore bequeathed, it is my will and desire,

that should my wife die before the expiration of the term limited, and the debts and legacies shall not have been paid and discharged, then, and in that case, the property so bequeathed to my said wife as aforesaid, shall be the right and estate of my son *Stephen Lewis Lee*, on the same terms and for the same purposes for which it is bequeathed to my wife, *Elizabeth Lee*, as aforesaid, and at the expiration of which term, I will and direct, that the division and distribution of my estate, as hereinbefore bequeathed, shall take place agreeably to this my will.   In testimony whereof, I have hereunto set, &c., this 16th June, 1827.

The first codicil is not material to the cause, and is therefore omitted.

*Second Codicil.*—Whereas I, *Stephen Lee*, of, &c., having made and duly executed my last will and testament, bearing date the sixteenth day of June, in the year of our Lord one thousand eight hundred and twenty-seven, and every clause and bequest therein contained, I do hereby ratify and confirm, except so far as is altered by this my codicil:

*Item.*—Whereas, since the making and executing my last will and testament, I have acquired, by purchase, a plantation, in *South River* neck, called Hasling, or by whatsoever name the same may be called, containing about one hundred and thirty-nine and three quarter acres of land, more or less.   I give and bequeath the same to my son, *Thomas Daniel Lee*, his heirs or assigns, in fee simple, upon the same terms, and under the same restrictions as the bequests made to him in my will; and I do hereby revoke the bequest made to my son, *Thomas Daniel Lee*, in my will, so far as relates to the lands and premises therein mentioned and bequeathed to him; the estate in *South River* neck, being given to him in lieu of my bequest made to him of any part of my landed estate, as mentioned in my said will ; and it is my will and desire, that in case my said son, *Thomas Daniel Lee*, should die without lawful issue, or before his arrival at lawful age, the lands and premises herein bequeathed to him, shall go and be divided between my other children, as before provided for in my said will.

*Item.*—It is my will, and I do hereby desire, that all my just debts shall be provided for and discharged, as soon as circumstances will permit, at the discretion of my executors hereinafter named.

*Item.*—I will and direct, that in addition to what I have already given to my daughter *Susan Bird,* in my will, that she shall have and receive one hundred and fifty dollars, current money, to be provided for and paid to her as before directed.

*Item.*—I further will and direct, that in addition to what I have already given to my son *John Lee,* in my will, that he shall have and receive one hundred and fifty dollars, current money, to be provided for and paid to him as before directed.

*Item.*—I further will and direct, that in addition to what I have already given to my son *Edward Lee,* in my will, that he shall have and receive one hundred and fifty dollars, current money, to be provided for and paid to him as before directed.

*Item.*—I do hereby revoke the bequest of any of my slaves, as made in my will, but will and direct that the whole of my slaves shall remain in the possession of my wife, during her life, for the benefit of her and my children, in common, in working and cultivating the lands and premises whereon I now reside, for the purposes, as heretofore set forth in my will, and after her decease, the same shall be equally divided among my children, that is to say, *Elizabeth Ann Lee, Louisa Mackall Lee, Emeline Priscilla Lee, Margaret Johns Linthicum, Stephen Lewis Lee and Thomas Daniel Lee,* to them and their heirs.

*Item.*—And lastly, I do hereby constitute and appoint *Stephen Lewis Lee,* and my friend and relation, *Robert Welch of Ben.,* to be sole executors of this my last will and codicil, revoking and annulling all former wills and codicils, confirm-this and none other to be my last will and codicil.

*Item.*—It is my will and desire, and I do hereby so will and direct, that my son *Stephen Lewis Lee,* shall not have or receive any commission, as one of the executors of this my last will and codicil, having made provision for him for what he shall receive of my estate.

In testimony whereof, I have hereunto set, &c., this 5th December, 1832.

After various answers filed, the defendants, *Stephen L. Lee and Robert Welch of Ben.*, executors of *Stephen Lee and Stephen L. Lee,* objected to the sufficiency of the allegations in the complainants bill, and to the relief thereby sought, and assigned the following reasons:

*1st.* Because *Susan Bird, John Lee, Benjamin Lee, Edward Lee and Margaret Johns Linthicum, executrix of Elizabeth Lee,* deceased, legatees of the testator, are material and necessary parties to a full and final adjustment of the matters set forth in the bill, and have been omitted to be parties thereto.

*2nd.* Because all the estate of the testator, real and personal, hath been disposed of by his last will and codicil, and there are many legacies specifically bequeathed, and it is obvious, that the whole cannot be paid over to legatees, and there must be abatement and contribution among them, and yet there are no such averments in the bill or parties made thereto as will enable the court to adjust fully and finally these conflicting claims.

*3rd.* Because it is not alleged in the bill, that the executors of *Stephen Lee,* deceased, assented to the legacy claimed by the bill, and there is a denial thereof in the answer of executors.

*4th.* Because the bill does not state, that the legatees, entitled to pecuniary legacies under the will and codicil, have been paid off.

*5th.* Because the pecuniary legacies are a charge upon the real and personal estates.

*6th.* Because there are no facts stated in the bill to give jurisdiction to this court—the complainants, if entitled to any thing, are entitled to remedy therefor in a court of law.

At the same time, there was filed in the cause an agreement in the words following :

" It is admitted that the personal assets of *Stephen Lee,* the " testator, exclusive of the negroes, now remaining in the " hands of *Stephen Lewis Lee,* one of the executors, are suffi- " cient to pay the debts of the testator, but it is not admitted

" that these assets are sufficient to pay the pecuniary legacies
" also.

" It is further admitted, that of the negroes returned in the
" inventory, the following are now dead, that is to say, *Philip*,
" *Abraham, Mary and William*, the son of *Judy; Philip*,
" *William and Mary* died in the life time of the widow, but
" *Abraham* was drowned since the property came to the pos-
" session of *Stephen Lewis Lee*, that is to say, on the 3rd of
" June, 1838.

" It is further admitted, that *Philip*, the child of *Judy*, was
" born in the year 1834, during the life of the widow."

The general replication to the answers of the defendants was
then filed, and at the same term the Chancellor passed an
order in said cause in the words following :

Ordered, that this case be, and the same is, hereby referred
to the auditor, with directions to make a statement from the
pleadings and proofs now in the case, and from such other
proofs as may be laid before him, of the present value of all
and each one of the slaves of the said testator, together with
their increase from the time of the death of the said testator,
to the day of making the said statement, and then, if practi-
cable, to make an equal division of the said slaves and their
increase, among the said legatees, *Elizabeth Ann Lee, Louisa
Mackall Cole, Emeline Priscilla Pindle, Margaret Johns Lin-
thicum, Stephen Lewis Lee, and Thomas Daniel Lee*; but if
an equal division of the said slaves cannot be made without a
sale, then to state the same accordingly to the end, that the
court may be enabled to order a delivery of the said slaves or
the payment of the proceeds of the sale of them in due propor-
tions to the said legatees.   And it is further ordered, that the
defendant, *Stephen Lewis Lee*, account for the hire and pro-
fits of the said slaves, and their increase, after the death of the
testator, to the said legatees, from the death of the said widow
of the said testator, until the same shall have been delivered
up or sold ; and the auditor is directed to state an account
accordingly of such hires, profits and increase, from the plead-
ings and proofs now in the case, and from such other proofs

as may be laid before him, and the parties are hereby authorised to take testimony in relation to the said statement, division and account, before any justice of the peace, on giving three days notice as usual, provided, that the said testimony be taken and filed in the chancery office on or before the twenty-fifth day of September next.

While the cause was pending before the auditor, testimony was taken under the interlocutory order, which is sufficiently stated in the opinion of this court.

On the 21st January, 1839, the auditor reported to the Honorable the Chancellor, that he had examined the proceedings in this cause, and in execution of the order of the 1st August, 1838, stated *four* accounts of the hire of the negroes of *Stephen Lee's* estate, from the time of the death of *Mrs. Elizabeth Lee*, the tenant for life, to this day, herewith submitted, A, B, C and D.

Account A, is stated according to the average testimony of the complainants' witnesses.

Account B, according to the average of the defendant's witnesses.

Account C, according to the average of all the witnesses.

On each of these three accounts hire is included for all the negroes to this day, and interest has been charged in the usual manner.

Account D, is stated according to the instructions of the solicitors of the defendant's, without interest.

The auditor further reports, that all the witnesses examined on that subject testify, that the said negroes, and their increase, cannot be equally divided among the six legatees thereof without a sale, and that he has not assigned to the several legatees their respective shares, awaiting the Chancellor's final order therefor.

The defendant, *Stephen L. Lee*, excepted to the auditor's report and accounts filed January, 1839, marked A, B and C, for the following causes:

1st. Because the witnesses on whose testimony said accounts are founded, do not know the said negroes or the value of their

hire, and do profess to have no such knowledge in their depositions.

*2nd.* Because the said witnesses, in their depositions, omit to state what allowances should be made the defendant for the clothing, medical attendance, and other expenses of said negroes who could work; and also, what for the support of the old and young negroes that could not work.

*3rd.* Because the said witnesses include in their estimates of hire, negro man *Abraham* who was drowned, as is proved without any neglect of said *Lee*, during the time for which hire is allowed for him, for which, of course, no service was received by the said *Lee*.

*4th.* Because interest is charged on the whole amount of the said estimated hire, whereas a majority, if not all the legatees agreed, that by the will and intention of the testator, said *Stephen L. Lee* was entitled to the said hires.

*5th.* Because in accounts A and C, the auditor has assumed that the average value of the negroes, according to the testimony of *William H. Journey*, is $200; whereas, it is evident, that the said value was intended to be reduced by an estimate of the expense of maintaining young and infirm negroes, as shewn in account D.

The complainants also excepted to the auditor's report and accounts filed on the 21st of January, 1839, marked B, C, and D, for the following causes :

*1st.* Because in account B, the estimate of the witnesses, *Joseph Carr* and *John Tydings*, is reduced ten dollars each for the cost of supporting two infant children, when it is evident the said witnesses, in speaking of the net annual value of the negroes, made an allowance for such expense.

*2nd.* Because in account C, the estimates of the same witnesses are subjected to similar reductions, and because the two accounts B and C differ from account A, and they insist upon those differences, each and all of them, as grounds of exception, and that the account A should be confirmed.

*3rd.* To account D the complainants except, because it is founded upon the estimate of a single witness, and because

even that estimate is reduced by an allowance for the support of the old woman, girl and boy, for which there is no foundation, and because it contains no charge for interest on the hire of the negroes, which the complainants insist is erroneous.

On the 16th day of March, 1839, the cause being submitted by consent, the Chancellor passed the following decree :

This case standing ready, &c., and it appearing by the auditor's report of the 21st January, 1839, made in pursuance of the order of the *first* day of August last, that the negro slaves in the proceedings mentioned and their increase, are not susceptible of division among the parties entitled without a sale thereof, and the said report to that extent not being excepted to by any of the parties, itis thereupon, this 16th March, 1839, by *Theodorick Bland,* Chancellor, by, &c., adjudged, &c., that the said report of the auditor, so far as the same assumes that the said slaves and their increase cannot be divided among the parties without a sale, be and the same is hereby ratified and confirmed.

And it is further adjudged, ordered and decreed, by the authority aforesaid, that the said slaves and their increase be sold; that *Alexander Randall* and *John Johnson,* of the city of *Annapolis,* be and they are hereby appointed trustees to make such sale, &c., and that the course and manner of their proceedings shall be as follows, &c.

From which decree the defendant, *Stephen L. Lee,* afterwards, on the twenty-seventh day of March, eighteen hundred and thirty-nine, prayed an appeal.

The said appeal was granted, and the proceedings were accordingly transmitted.

On the 29th day of March, 1841, complainants filed their petition in chancery, representing briefly, the history and progress of the cause, and that an appeal was prosecuted by the said *Stephen L. Lee,* one of the defendants from said decree, to the Court of Appeals for the Western Shore of *Maryland,* which court, at December term eighteen hundred and forty, dismissed the said appeal, upon the ground, as your petitioner is advised, that no decree had been passed by your

honor, ascertaining the amount of hires and profits to which the legatees were entitled. They further state, that no account of such hires can be stated up to the day of the sale of said negroes, as directed by your honor's order of August, eighteen hundred and thirty-eight, because the operation of the decree ordering a sale, is superseded by the appeal bond, and as the Court of Appeals will not review your honor's decree until an account of hires is ratified by your honor, your petitioners, as the case now stands, are without the means of procuring an adjudication upon their rights, and they refer to a copy of the order of the Court of Appeals, dismissing the appeal as aforesaid, marked A, and pray that the same may be taken as a part of their petition. And your petitioners now pray your honor to re-instate the said cause in this court, and to decide upon the exceptions to the auditor's account for hires and profits, as to your honor may seem right, and to grant them such other and further relief as the nature of the case may require; and they will pray, &c.

*Exhibit A.*—STEPHEN L. LEE vs. THOMAS N. PINDLE AND WIFE AND OTHERS. *Court of Appeals of the Western Shore. December term,* 1840. This appeal being submitted by counsel for the parties, upon the question whether the merits thereof could at this time be considered, and this court being of opinion that the decree from which the appeal is prosecuted, is not final within the intent and meaning of the act to prevent unnecessary expense and delay in prosecuting appeals from courts exercising equity jurisdiction in this State, passed at December session in the year eighteen hundred and thirty, chapter one hundred and eighty-five, and that the record thereof ought not to have been transmitted at this time to this court.

It is thereupon, this sixth day of February, in the year eighteen hundred and forty-one, by the Court of Appeals for the Western Shore adjudged, ordered and decreed, that the said appeal in this court be and the same is hereby dismissed with costs, and the cause be remanded to the Court of Chancery, that such proceedings thereon may be had as the case may require.

On the 30th March, 1841, the Chancellor (BLAND,) passed the following decree :

*In Chancery, March Term*, 1841.  This case coming before the court upon the petition of the complainants, filed on the 29th of March, 1841, and upon the agreement heretofore filed, submitting the case upon exceptions, and standing ready for hearing upon the said exceptions, the proceedings were read and considered.

It is thereupon, this thirtieth day of March, in the year one thousand eight hundred and forty-one, by *Theodorick Bland*, Chancellor, and by the authority of this court adjudged, &c., that the account reported and filed by the auditor on the 21st of January, in the year 1839, and marked C, be and the same is hereby ratified and confirmed, and that the exceptions thereto filed, be and the same are hereby overruled.   And it is further adjudged, ordered and decreed, that the defendant, *Stephen L. Lee* pay, or bring into this court to be paid to the complainants and others, the legatees of the said slaves in the proceedings mentioned, the sum of five hundred and ninety-five dollars and thirteen cents, with interest on the sum of five hundred and seventy-five dollars and forty-seven cents, part thereof from the twentieth day of January, in the year eighteen hundred and thirty-nine, until paid or brought in to be paid as aforesaid, and that a further account of the hires and profits of said slaves with their increase, shall be hereafter taken by the auditor from the said twentieth day of January, in the year eighteen hundred and thirty-nine, until the said slaves shall be sold as provided by the decree of the 16th day of March, in the year aforesaid, from the proofs and proceedings now in the case, and from such other evidence as may be laid before him; provided that such proof be taken before some justice of the peace on three days notice as usual, and filed in the Chancery office on or before the final ratification of the sale as before provided.

And it is further adjudged, ordered and decreed, that the said defendant, *Stephen Lewis Lee* pay, or bring into this court to be paid to the complainants, their costs in this court, to be taxed by the register.

From this decree the said *Stephen L. Lee* also appealed.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY and CHAMBERS, J.

By T. S. ALEXANDER for the appellant, who insisted—

The cause having been submitted on the 16th of March, 1839, the Chancellor passed a decree confirming so much of the auditor's report as stated that the negroes could not be divided, and directed the same to be sold, and thereout the costs of suit to be paid.

From this decree the defendant, *Stephen L. Lee*, appealed, and on the 6th of February, 1841, the appeal was dismissed by the Court of Appeals, on the ground that the decree was not final.

On the 29th of March, 1841, the complainants filed their petition, praying that the case might be re-instated, and that the court would decide on the exceptions to the auditor's report.

On the 30th of March, 1841, the Chancellor, without any notice whatever to the defendant, passed a further decree, ratifying and confirming account C, and overruling the exceptions thereto, directing the defendant, *Stephen L. Lee*, to pay or bring into court to be paid to the complainants and others, legatees of the slaves, the sum of $595.13, with interest and costs of suit, and directing a further account to be taken of hires which should accrue until the sale thereof.

From this decree the defendant has likewise appealed, and will now insist—

1. That the decree of the 30th March, 1841, was prematurely entered.

2. That the decree of the 16th March, 1830, having been passed after a full hearing of the cause, and without any reservation of any equity, for further directions must be treated as an adjudication that the complainants are entitled to relief

by a sale of the negroes mentioned in the proceedings, and to no other relief.

3. That the account C, which is adopted by the decree of the 30th March, 1841, is erroneous—1st, because the auditor has included in his average the estimates of witnesses who did not profess to know the negroes in question—2nd, because those witnesses have not made nor even professed to make due allowances for the clothing, &c., of the negroes, nor proper allowances for the support of the negroes incapable of labor—3rd, because the said account charges the defendant with the hire of negro *Abraham* for a term subsequent to his death—4th, because interest is charged to the defendant on the annual values of the services of the negroes.

In all these particulars it will be insisted, that account C is erroneous, and that the defendant, if chargeable at all in this suit, is only to be charged with the sum found due by the account D.

4. That the profits of those negroes during the term of six years, mentioned in the last clause of the will, are charged with the payment of the pecuniary legacies bequeathed by the testator, and in fact have not been adequate to the payment thereof. To this part therefore the complainants and others residuary legatees have no title.

5. As a corollary from the 4th point, it will be insisted, that the pecuniary legatees and the personal representative of the widow are necessary parties to any suit calling for an account of such profits.

6. That the bill in this cause having been filed before the expiration of the above term was prematurely brought, and so no relief can be given by way of decree for a sale or partition of said negroes.

7. That the decree awarding costs against the appellant is inconsistent with the previous decree of the 16th March, 1839, by which the costs are charged on the proceeds of sale, and is moreover unjust and oppressive, inasmuch as the questions raised on the record were at the least fair questions, and the conduct of the defendant in his defence was also fair.

8. That the costs of all parties are properly chargeable on the fund to be distributed in this cause.

9. That the decree of 30th March, 1841, is erroneous in directing payment of a gross sum to the complainants and others, legatees of the slaves, whereas the persons so entitled should have been named, and to each of them a just share—proportion in severalty, ought to have been awarded.

And by J. JOHNSON for the appellees, who contended—

1. That upon the true construction of the will and codicils of the testator, the negroes and their increase, were to be divided among the six legatees named in the second codicil, immediately after the death of the widow.

2. That the right of these legatees to the enjoyment of the property specifically bequeathed to them, did not depend in any degree upon the sufficiency of the provision for the payment of pecuniary legacies, and that consequently the negroes and their profits stand wholly exempt from the claim of the pecuniary legatees.

3. That the only necessary parties to the bill were the executors and the persons among whom the slaves were to be divided upon the death of the widow.

4. That the Chancellor did right in ratifying account C.

STEPHEN, J. delivered the opinion of the court.

In the discussion of this case, several points have been raised and argued by the counsel of the appellant, which this court now have to consider and decide. The first objection is, that the final decree of the Chancellor was premature, the case not being at that time ready for the judicial action of the court, we think there is nothing in this objection. Before the first decree was passed, and prior to the first appeal, which was dismissed by this court as illegally taken, the cause, by consent of parties, had been submitted to the Chancellor upon the auditor's report, and when the case was dismissed from this court, and the cause went back to the Court of Chancery for further proceedings, it was brought to the notice of that court by the petition of the appellee, which placed it in the

same situation as if no appeal had been taken, and the cause had never been removed from that jurisdiction. We think the second objection of the appellant equally untenable and unfounded. No reservation of any equity for further directions was necessary in the first decree for a sale of the negroes, to warrant the court in granting full and complete relief to the appellee for the hire and annual value of the negroes, when the final decree was passed. The principle seems to be settled, that the court will not, on further directions, decide a question not reserved by the decree; the rule, however, does not prevent the court from giving interest on further directions, though the question of interest be not reserved by the decree. For this principle, see 2 *Smith's C. P.* 403, 404. The same principle which would warrant the allowance of interest without any reservation to that effect in the decree, would, we think, upon fair and reasonable grounds of analogy, sanction the allowance of hire and value for the negroes, without any reservation having been made upon that subject, when the decree for a sale was passed. Upon the appellant's third point, which charges error in the principles assumed by the auditor in stating the account, which was adopted by the decree of the Chancellor, we think the objection is well founded, so far as he has relied upon the estimates of witnesses, who did not know the negroes in question. Their estimates ought not to have been mixed up with, and allowed equal weight and influence, with the valuations of those who knew the negroes, and who testified from such, their personal knowledge. An average of hire and value founded upon such a principle, might work great and serious injustice. Proper allowances ought also to be made for the expense of maintaining and clothing the whole, as well those incapable of labor as those who were able to work. The hire of the negro man *Abraham*, who was drowned, ought to have been carried up to the time of his death; and ought not, certainly, to have been extended beyond that period, as a charge against the appellant. We think there was no error in the charge of interest on the annual hire or value of the negroes' services; at the expiration of each

year he was a debtor to that amount, and interest, we think, was properly charged upon it. We think that the appellants fourth point is clearly untenable.

The will and codicil are to be construed together as one instrument, and are to be reconciled as far as practicable; but if there be any conflict or repugnancy between them, the codicil, as the last indication of the testator's mind, must operate in preference to the will. By the second codicil, the negroes are given to the wife for life, in language too clear to be misunderstood; and at her death the direction is equally explicit, that they are to be divided amongst the legatees therein named. If this construction be correct, the fifth point is wholly untenable; because the pecuniary legatees, and the personal representative of the widow, have no interest which can be affected by this decree, and are therefore not necessary parties to this suit. From the death of the widow, the hire and profits of the negroes' services ceased to be a fund for the payment of their legacies, and they were no longer interested in any question, touching that subject.

For reasons already assigned, we think that the sixth point, which objects that the suit was prematurely brought, is wholly unavailing. Upon the death of the widow, the right of the specified legatees to call for a distribution immediately attached, and their standing in court cannot, of course, be impeached, upon the ground that their bill was prematurely filed. The seventh and eight points relative to costs, cannot be sustained. The principle is well settled, that the question of costs in Chancery is discretionary. At the time of the first decree, the costs were properly charged on the fund, because at that time no improper obstacles had been interposed by the appellant, to the attainment of the objects of the suit; but afterwards the case assumed a different aspect; andt he untenable and vexatious grounds of defence taken by the defendant, well warranted the Chancellor in the course which he pursued in his final decree upon the subject of costs, which was, that the defendant, *Lee,* should pay to the complainants their costs in that court. Upon the ninth point, we think there is error in

the decree of the court below.   The distributive share of each legatee should have been liquidated, and finally settled by the decree, so as to prevent all future controversy and litigation upon the subject ; an object which the Court of Chancery is always studious to accomplish, and which is the main and leading purpose of the rule, which requires that all proper parties should be made to every suit therein instituted.   Upon these views of the case, disagreeing as we do with the Chancellor in the particulars mentioned above, we think that the decree of the court below ought to be reversed with costs, and the cause remanded for further proceedings according to the principles herein contained.

DECREE REVERSED WITH COSTS.