(Decided 27th January, 1881.)

JOHNS HOPKINS UNIVERSITY,. CLAUDE BAXLEY and
ISAAC R. BAXLEY *vs.* THEODORA PINCKNEY.

*Construction of a Will and Codicil.*

The will of B. dated in May, 1873, contained the following: 1st. A provision for the preservation and protection of the testator's lot in a cemetery. 2nd. A provision directing the manner in which his grave should be marked, and limiting the privilege of interment in his burial lot. 3rd. A provision for the payment to his brother, of a proportion of the expenses which his brother had incurred in removing the remains of members of the testator's family to a burial lot; and also for a legacy of $1000 to the brother. The fourth provision was as follows: "I direct that the sum of $10,000 shall be set aside and invested by my executors hereinafter named, in a safe security, and the income thereof annually to be paid to T. P., for and during her life, if she shall be and remain unmarried: at her death, or upon her marriage, the principal sum above named to become and be a part of the residue of my estate, and to be disposed of as hereinafter provided for." Then follows a statement of his reasons for making this bequest. 5th. A provision disposing of the rest and residue of his property in favor of his son C., if he should be alive at the death of the testator; and in the event of the death of C., making other dispositions of said rest and residue. Finally, he appointed his executors. In February, 1876, he executed the following codicil to his will:

Johns Hopkins Univ., *et al. vs.* Pinckney.

"First. I revoke all devises and bequests given by me to my son C., therein, absolutely, and in lieu thereof, I devise to him all my real estate for life; after his death, then to go to the Trustees of the Johns Hopkins University, for them therewith to endow any medical professorship therein, they may think proper. Secondly. I bequeath to my brother, in lieu of the $1000 in said will given, the sum of $5000 for life; after his death, to go to said trustees of said University for said purpose. Thirdly. I bequeath the $15,000 in bonds in my box in bank, and the money on deposit in the banking house of J. S. G. & Co., and any other personalty of which I am possessed, to the said trustees of said University for said purpose, hereby republishing said will in every other respect." In a proceeding in equity, it was HELD:

That B. meant to revoke and alter the third and fifth clauses of his will only, and by the last clause in the codicil, to give the rest of his personalty, not disposed of by the preceding clauses, to the University; subject, however, to the two provisions of his will in regard to his burial lot, and subject to the legacy of $10,000 in favor of T. P.

APPEAL from the Circuit Court of Baltimore City.

This was a proceeding in equity, on the part of the appellee, to obtain a construction of the will, and codicil thereto, of Dr. H. Willis Baxley, late of the City of Baltimore, who died in that city on the 13th of March, 1876, having executed the testamentary papers in controversy. The bill prayed, that the executor of the estate might be authorized and required by the Court, to invest ten thousand dollars in some safe security, and to pay the income thereof annually to Miss Pinckney, who claimed to be entitled to receive it as legatee, as long as she might live and remain unmarried. The appellants, Claude and Isaac R. Baxley, were the only children of the testator, who survived him.

By the will the testator directs:

First. That the sum of one thousand dollars shall be paid over to the Trustees of Greenmount Cemetery, in

the City of Baltimore, to be by them invested in a safe ground-rent security of said city, and the annual income thereof to be by them expended in the protection from intrusion of his cemetery lot, and for the painting, and keeping therein of suitable shrubbery and ivy.

Second. That a rough hewn granite rock of large size, with an inscription thereon, to wit, "H. Willis Baxley and Annabella Baxley, and their children," shall be prepared at the cost of his estate, and put upon the slab at present covering his tomb, and upon such other basis as may be necessary for its support; and that said rock shall have trained over it, thickly, and always, the ivy green; and that after the burial in said tomb of his son Claude, if he should so select to be with his father and mother, his Greenmount Cemetery lot shall be forever after closed to further interments.

Third. That his executors pay to his brother, J. Brown Baxley, the testator's proportion of whatever costs were incurred by the brother for the removal of the remains of his father and mother, and their children, from Clover Hill Cemetery, and their interment in his Greenmount lot; and that the sum of one thousand dollars shall be paid to his brother, J. Brown Baxley, if alive at his death, in token of his recognition of his kindly interest in his son Claude's welfare. If his brother shall not be alive when this will takes effect, then this legacy to become null and void.

Fourth. He directs that the sum of ten thousand dollars shall be set aside and invested by his executors, hereinafter named, in a safe security, and the income thereof annually to be paid to Theodora Pinckney, (niece of Judge Marion, of Skaneateles, New York,) for and during her life, if she shall be and remain unmarried: at her death, or upon her marriage, the principal sum above named to become and be a part of the residue of his estate, and to be disposed of as hereinafter provided for; and that his object

in giving this legacy is to show his grateful sense of the Christian sympathy in his sufferings of one met in Rome several years since, and to testify to the influence for good of her inculcation and practice of the precepts of divine truth, in strengthening his efforts to " seek the Kingdom of God and His righteousness."

Fifth. He devises and bequeaths all the rest and residue of his real and personal property of every name and nature, and wheresoever situated, to his son, Claude, if he shall be alive at the time this his will shall take effect; but if he shall be dead at that time, then, and in that case only, he devises to George H. Williams, attorney at law, and to his brother, J. Brown Baxley, both of Baltimore, and to the survivor of them, and thereafter to such trustees as may by them, or the survivor of them, be named, all the rest and residue of his real and personal property, comprehended by the beginning of this fifth clause, in trust and confidence, nevertheless, for the following uses and purposes, to wit: the income thereof to to be expended in the support and education of the children, or child, if but one, of his son Claude; and on their attainment to lawful age, the principal to be equally divided among them, if more than one, otherwise to be paid to the survivor of them; and if none survive, then, after increasing his bequest to the Trustees of Greenmount Cemetery, to the amount of one more thousand dollars, for the protection and preservation of his cemetery lot, the above named trustees shall do with the rest and residue of the principal as to them shall seem right to my memory. In this part of the paper the testator enters into particular reasons for the disposition made by him of his property, in this clause of his will.

Finally he appoints his son, Claude Baxley, and George H. Williams, attorney at law, his executors.

The codicil to this will is fully set forth in the Court's opinion, wherein the case is further stated.

The cause was argued before BOWIE, GRASON, ALVEY, ROBINSON and IRVING, J.

*Charles J. M. Gwinn*, for the appellant, Johns Hopkins University.

The question in the case, is whether the bequest made to Theodora Pinckney, by the testamentary writing, dated May 17th, 1873, was revoked or annulled by the codicil of February 26th, 1876. "The mere fact of making a subsequent testamentary paper does not work a total revocation of a prior one, unless the latter expressly, or in effect, revoke the former, or the two be incapable of standing together." "Though it be a maxim that no man can die with two testaments, yet any number of instruments, whatever be their relative date, or in whatever form they may be, so as they be all clearly testamentary, may be admitted to probate as together containing the last will of the deceased." "If a subsequent testamentary paper be partly inconsistent with one of earlier date, then such latter instrument will revoke the former as to those parts only where they are inconsistent." *Williams on Executors*, (*4th Am. Ed.,*) *part 1, book 2, ch. 3, sec. 2, p.* 132; *Lemage vs. Goodban*, 1 *L. R. Prob. and Div.*, 61; *Green vs. Triber*, 9 *L. R. Chan. Div.*, 1878, *p.* 234.

From the principles thus stated, the conclusion is plain, that a "will and codicil are to be construed together as one instrument, and are to be reconciled as far as practicable; but if there be any conflict or repugnancy between them, the codicil, as the last indication of the testator's mind, must operate in preference to the will." *Lee vs. Pindle and Wife*, 12 *G. & J.*, 305; 1 *Jarman on Wills*, (*2nd Am. Ed.,*) 156, 158; 1 *Wms. Ex'rs*, (*4th Am. Ed.,*) *margin page* 133; *Baker vs. Story*, 23 *Weekly Reporter*, 147, (1875;) *Kermode vs. McDonald*, 3 *L. R. Ch. App.*, 586, 587; *Bryan vs. White*, 14 *Jurist*, 919; *Sheddon vs.*

*Goodrich,* 8 *Sumn. Ves.,* 499, Lord ELDON; *Holder vs. Howell,* 8 *Sumn. Ves. Jr.,* 102, Sir WM. GRANT; *Parker vs. Nickson,* 9 *Jurist, N. S.,* 451; *Earl of Hardwicke vs. Douglass,* 7 *Cl. & F.,* 795; *In re Daniel Low,* 3 *Swab. & Trist,* 478; *Bosley vs. Bosley,* 14 *Howard,* 395, TANEY, C. J.; *Barlow vs. Coffin,* 24 *Howard's Pr. Rep.,* 54; *Larrabee vs. Larrabee,* 28 *Verm.,* 274.

There would seem to be no reason for abstaining from giving full effect, in every case, to the controlling power of a codicil, if there be any conflict or repugnancy between the codicil and the will. When the question is concerning a will only, it is an established rule " that where two clauses or gifts are irreconcilable, so that they cannot possibly stand together, the clause or gift which is posterior in local position shall prevail; the subsequent words being considered to denote a subsequent intention." 1 *Jarman on Wills,* 2 *Am. Ed.,* 394; *Iglehart vs. Kirwan,* 10 *Md.,* 564; *Pue vs. Pue,* 1 *Md. Ch. Dec.,* 385. If a subsequent clause in a will, which is inconsistent with, or repugnant to, a prior clause, prevails over such prior clause, it would seem that the same effect ought, with greater reason, to be accorded to a *codicil* inconsistent with, or repugnant to, any clause in a prior will, since such codicil is evidence of a testamentary intention manifested at a later period of time.

It would seem to be settled law, moreover, in this State, that where there is a general and particular intent, apparent upon the face of a will, "the general intent, although first expressed, shall control and overrule the particular intent." *Chase vs. Lockerman,* 11 *G. & J.,* 206; *Jones vs. Earle,* 1 *Gill,* 401, 402; *Thompson vs. Young,* 25 *Md.,* 458; *Taylor vs. Watson,* 35 *Md.,* 524. It follows, certainly, that in a case where the general intent was not only expressed subsequent to the particular intent, but was expressed at a subsequent period of time, in a codicil, in which the testator radically changed his

prior testamentary dispositions, the general intent, as expressed in the codicil, ought, under the decisions in this State, to be construed as controlling and overruling the particular intent expressed in the prior will.

No inference, contrary to the application of this rule, can be deduced from the fact that the codicil, containing the expression of this general intent, republishes the will in every respect in which it does not alter it. Such words of republication were superfluous. The codicil had, of itself, the effect to republish the will, as of the date of the codicil, in respect to all parts of the will, which were not revoked by the codicil in express terms, or by a devise so entirely inconsistent with the terms of the will as to make it impossible to give effect to both. *Jones vs. Earle,* 1 *Gill,* 400 ; *Bartholomew's Appeal,* 75 *Penn. State,* 169 ; 1 *Wms. on Ex'rs,* (4th *Am. Ed.*) *margin p.* 179.

It is true that the most liberal and enlarged interpretation will be given to testamentary instruments, in order to effectuate the manifest design of the testator, " if there be apt words to effectuate it." *Chew vs. Chew,* 1 *Md.,* 168, 169. But this Court has said, adopting the words of Lord KENYON in *Lane vs. Lord Stanhope,* 6 *Term Rep.,* 352, " it is our duty, in construing a will, to give effect to the *devisor's* intention, as far as we can consistently with the rules of law, not conjecturing, but expounding his will *from the words used."* We must take the terms and words he uses, and gather his intentions from *them. Taylor vs. Taylor,* 47 *Md.,* 299.

The bequest to Theodora Pinckney, contained in the testamentary paper, dated May 17th, 1873, with the provision as to the disposition of the fund upon her death or marriage, was not the gift of a general legacy to be drawn from a specific fund. It was, therefore, not a demonstrative legacy. 2 *Redfield on Wills, Ed.* 1866, *pp.* 462, 463, 467 ; *Mullins vs. Smith,* 1 *Drew & Sm.,* 204 ; *O'Hara on Const. of Wills,* 330. It was, on the contrary, a general pecuni-

ary legacy. *Simmons vs. Valance,* 4 *Brown Chanc. Rep.,* *Am. Ed.,* 251, 254 ; *O'Hara on Const. of Wills,* 336 ; *Hawkins on Wills, Am. Ed.,* 300, 301.

The repugnancy between the testamentary paper and the codicil in relation to the matter now in controversy, is evident. The testator made by the codicil, an absolute disposition of his entire estate and property, leaving, in fact, no part of the original testamentary paper operative, except the clause which appointed his executors. He revoked all his will, saving this portion only. *Kermode vs. McDonald,* 3 *L. R. Chanc. App.,* 586, 587 ; *Bosley vs. Bosley,* 14 *Howard,* 395 ; *Larrabee vs. Larrabee,* 28 *Verm.,* 274.

The particular provisions made in the first part of the codicil, and the bequest to the Johns Hopkins University, in the last paragraph of that codicil, of the bonds of the testator in his box in bank; of the money on deposit with J. S. Gittings & Co., and of any other personalty of which he was possessed, prove plainly that the provision made for the Johns Hopkins University was not made by implication, but was, on the contrary, a plain, unqualified and absolute disposition in favor of that University of the reversion of his real estate, and of all his personal estate, except that given to his brother, J. Brown Baxley. The absolute disposition thus made would seem "to be expressed with such clearness as to operate as a revocation of the plain and specific" bequest to the appellee. There do not appear in this case any of the particular circumstances which influenced the judgment of TINDAL, C. J., in *Herle vs. Hicks,* 1 *Cl. & F.,* 24–33. The case under discussion is more analogous to *Earl of Hardwicke vs. Douglas,* 7 *Cl. & F.,* 808–812, Lord BROUGHHAM. The true rule to govern us in the consideration of this case is stated by Lord COTTENHAM in his dissenting opinion in the case last cited: "If the words do not bear it, it is contrary to all rule to speculate upon the intention; for the

ground of conclusion ought not to be found in anything but the expressions which are used." 7 *Cl. & F.,* 813, 814.

The last clause in the codicil shows *a general intent, last expressed, in a separate and final testamentary paper,* which, under the authority of the Maryland and other cases, already cited, controls the *particular intent* manifested in the will in favor of the appellee. *The final purpose of the testator .must be gathered from his latest words.* 47 *Md.,* 299.

*F. H. Hack* and *Charles Marshall,* for the appellants, Claude and Isaac R. Baxley.

The changes made in the disposition of the testator's estate by the codicil, all operating against those who would have taken under the will, demonstrate a total alteration in the testator's mind and show a marked general intention on his part to make a new and different distribution; and that it was his intention that the legacy prompted by an alleged Christian sentiment, should yield to the Christian purpose of aiding the advancement of medical science. It is an elementary principle of law, that in the interpretation of ambiguous and obscure wills, effect should be given to the main and leading purpose evident in the testator's mind.

Where there is a particular intent expressed in a will, and a general intent, inconsistent therewith, the latter must prevail. *Jones vs. Earle,* 1 *Gill,* 400; *Simper's Lessee vs. Simpers,* 15 *Md.,* 160; *Lee vs. Pindle,* 12 *G. & J.,* 288; *Chase vs. Lockerman,* 11 *G. & J.,* 185.

The appellee was a stranger to the testator. His return to his former associations freed him from a passing influence to which he had doubtless attached too much importance. There is no intimation of any change in his affection for his son Claude, or Claude's children. Is it not, then, a most reasonable presumption, that the new motive which prompted the codicil would have acted with as much effect against the appellee, as it evidently did against them?

There were three distinct matters dealt with by the will: 1st, the testator's property; 2nd, his alleged personal grievances: 3rd, the appointment of executors. It will be seen that the first and second clauses, and the first part of the third clause, of the codicil, deal exclusively with the first matter referred to, the property. Clearly, then, the confirmatory clause relied on by the appellee had reference solely to the other two matters comprehended by the words "every other respect;" namely, the alleged grievances, and the appointment of executors. Taking the whole sentence, it cannot be conceived, we respectfully submit, to what the words "every other respect" can possibly refer, unless "respect" other than the property just disposed of. The testator could not have intended to refer to a part of the will which embraced a disposition of any part of his estate, for he had just used words which gave it to the University absolutely, with the exception of a small portion excepted by the codicil itself. And this gift, as to all personalty he knew of, was "specific," *i. e.* "his bonds and money." The appellee would place him in the position of confirming her legacy, and in the same sentence depriving the executors of the power of satisfying it. Without commenting on that portion of the will which deals with the alleged grievances, we desire to call the Court's attention to the fact that it formed in the mind of the testator the most important part of his will, for he speaks of his property as "the little I shall leave of worldly goods." Remembering this, it is only too plain what he meant, when he confirmed his will in "every other respect" than the disposition of property, made *eodem tempore.*

In the view of the appellee, if the general bequest in the third clause of the codicil revokes her legacy given in the will, it must also revoke the legacy given the testator's brother in the second clause of the codicil. Remembering that a codicil is made for the purpose of revoking,.

altering, or adding to a will, we do not conceive that a legacy, expressly given in the codicil in lieu of one given in the will (and in this case qualified by a remainder over in favor of the residuary legatee,) can stand upon the same footing as a legacy not mentioned in the codicil at all. The fact that the legacy to the testator's brother is thus excepted in the codicil, is strong evidence that he intended to except him only, of all the other legatees mentioned in the will who would have taken part of his personalty. It is also to be remembered that the codicil alone (not the codicil and the will together,) is to be taken as the last indication of the testator's intention; and if there be repugnancy between it and the will, it must operate in preference to the will. *Lee vs. Pindle,* 12 *G. & J.,* 288.

The codicil revoked all legacies given by the will. Strong evidence of this is the fact that the codicil makes special exception in favor of Claude and J. Brown Baxley.

The fact that a legacy mentioned in a will is not specially excepted from the operation of a codicil which pretends to deal with the testator's whole estate, is strong evidence that the testator intended to revoke such legacy. *Larabee vs. Larabee,* 28 *Vermont,* 274.

In the above case, certain furniture was bequeathed to the testator's daughters by will. He afterwards made a codicil in which, after making certain bequests, he left all his real and personal estate to his son, not mentioning the former legacy to the daughters. In their opinion the Court say: "There is no express revocation of the gift of the legacy, yet if there was a subsequent gift of it inconsistent with the former, it will be a revocation. The legacy will pass under the *general language* of the bequest, for it is a gift of all his real and personal estate which shall remain, not that which remains undisposed of under the original will. If the testator had intended that the

legacy bequeathed by the will should pass *by it,* and not be affected by the codicil, he would have excepted it. The fact that it is not excepted is evidence that he intended it should pass under the codicil: *" i. e.* be revoked." In the case of *Holden vs. Howell,* 8 *Vesey,* 96, it was decided that where a codicil is made for a particular purpose, and pretends to deal with and dispose of the whole estate the same as the will, but omits one of the trusts of the will, at the same time declaring that the testator does " confirm my said will in every particular thereof that is not hereby altered or revoked," such codicil revokes the omitted legacy. See also, *Kemode vs. McDonald,* 3 *L. R. Appeals,* 586, 587 ; *Bosley vs. Bosley,* 14 *Howard,* 395.

*John H. Thomas,* for the appellee.

The principles of law governing cases like the present one, are stated, in *Williams on Ex'rs, part* 1, *book* 2, *chap.* 3, *sec.* 2, *p.* 162 ; 22 *Weekly Reporter,* 353 ; *Flood, Wills of Pers. Prop.* (1877,) *pp.* 331–2–3, 355 ; 4 *Kent's Com.,* 531–2 ; 1 *Redfield on Wills,* 352, *sec.* 14 ; *Iglehart vs. Kirwan,* 10 *Md.,* 559, 564 ; *Pue vs. Pue,* 1 *Md. Ch. Dec.,* 385 ; 2 *Am. Lead. Cases,* 506; *Holden vs. Blaney,* 119 *Mass.,* 421; *Kerr vs. Baroness Clinton,* 8 *Equity (Law R.,)* 464 ; *Robertson vs. Powell,* 2 *Hurlston & Coltman, (Exch.,)* 752 ; *Acc. Doe, d. Hearle vs. Hicks,* 1 *Clark & Fin.,* 20 ; *Roscoe's Dig. of Evid. at N. P., p.* 934 ; *Quincy vs. Rogers,* 9 *Cushing,* 291 ; and see *Williams vs. Evans,* 1 *Ellis & Blackb.,* 727, (72 *E. C. L. Rep.,* 740) ; *Pillsworth vs. Morse,* 14 *Irish Chan. Rep.,* 163, 176–180 ; *Jones vs. Earle, Ex'r,* 1 *Gill,* 395, 400 ; *Pue vs. Pue,* 1 *Md. Ch. Dec.,* 385 ; *Lee vs. Pindle,* 12 *Gill & J.,* 288, 305 ; *Douglas vs. Blackford,* 7 *Md.,* 8 ; *Taylor vs. Watson,* 35 *Md.,* 519 ; *Chew vs. Chew,* 1 *Md.,* 163–169 ; *Young vs. Twigg,* 27 *Md.,* 625 ; *Cornish vs. Willson,* 6 *Gill,* 320.

The rules laid down in the books are plain and peremptory, and it only remains to apply the tests which they prescribe.

The bequest to Miss Pinckney is clear.   The desire that she should enjoy it is conspicuous, and the impulse which prompted the testator to bestow it is expressed with unusual earnestness and force.   Is it "equally clear and free from doubt" that he intended to revoke it?   If not, there is no revocation.   *Robertson vs. Powell, 2 Hurlston & Coltman, (Exch.,)* 752.

There are no "surrounding circumstances" (see *Taylor vs. Watson,* 35 *Md.,* 519) indicating any such intention. There is no intimation of any change in his regard for Miss Pinckney, or in the grateful feelings towards her which the bequest discloses.   No new object of personal sympathy had presented itself to him.   The determination to endow the Johns Hopkins University was the only fresh purpose that had entered his mind.   But it was not an exclusive purpose, and whenever he intended it to supersede the purposes declared by his will, he said so, in terms, leaving nothing to implication.   The bequest to Miss Pinckney he did not revoke or allude to.   On the contrary, after modifying, as above, the provisions of the will in favor of his son and his brother, and making the general disposition of personalty contained in the third clause of the codicil, he expressly republished his will "*in every other respect.*"   If the contention of the respondents is maintainable, there was no "respect" in which this republication could have any effect, except the appointment of executors.   The codicil, in that aspect, was a new will, except as to the executors.   But such a construction is absolutely incompatible with the words used.   Neither he nor the draughtsman of the codicil could possibly have meant to indicate a single "respect," by the words "every other respect," which, in themselves, necessarily involve the suggestion of more than one.   Besides, as the codicil neither expressly nor by implication revoked or could have been imagined to revoke the appointment of executors made by the will, republication in that regard was too

plainly needless to have been thought of. Any one, to whom it could have appeared necessary, would have made it in express and exclusive words. Nor is it believed to be within the range of reasonable supposition, that the testator, in his zeal for the endowment of the University, intended to revoke the provisions of the will for the protection and adornment of his own burial place and that of his family, or the repayment to his brother of moneys expended, on his behalf, in honoring the remains of their parents. These provisions, and the bequest to Miss Pinckney, appear to have been alike near to his heart, and when he republished his will "in every other respect," all of these were "respects" which he must have had alike in contemplation. The bequest to Miss Pinckney in particular, it must be borne in mind, too, was already for life only, *dum sola*. At her death the $10,000 in dispute must pass to the University, in every event, just as the devise to the son and the bequest to the brother, for life, under the codicil. That Miss Pinckney, like them, should enjoy her legacy for her single life, was as reconcilable as the provisions in their favor, with the contemplated benevolence of the testator to the University, which has perpetual life. When, therefore, after the changes in the codicil, as to the brother and the son, and the general devise of personalty to the University, the testator still recurred to the will and republished it, it is not only consistent with his purpose of University endowment that he intended the bequest to Miss Pinckney to remain as the will had given it, but that he meant to re-assert the first purpose and make the second subordinate to it. The testator merely meant to withdraw from his son and give to the University the remainder in the legacy, after Miss Pinckney's death, precisely as he withdrew from his son and gave to the University all but a life estate in the realty. Taking the will and the codicil "as one instrument;" remembering that they "are to be reconciled as

far as practicable;" that it is "the natural presumption" that both dispositions were intended to stand; that revocation is not to be implied "further than is absolutely necessary," and only "to the smallest extent that will serve to reconcile the two instruments;" that a devise in a codicil, to work revocation, must be one which "cannot possibly be reconciled with the will,"—one indeed, so far irreconcilable with it, that "the two papers cannot possibly exist conjointly, so as to form one will," and it is "impossible to give effect to both" of the clauses supposed to conflict—in other words, that the two clauses are incapable of standing together under "the most enlarged and liberal interpretation"—it is difficult, to see upon what authority the absolute, implied revocation insisted on can be maintained. "The presumption is in favor of the continuance of the intention which has been formally expressed," and, that intention being clear, "it is incumbent on those who contend that it is not to take effect, by reason of a revocation in the codicil, to show that the intention to revoke is equally clear and free from doubt with the original intention to devise." An intention to revoke, clear and free from doubt, is not only not to be found, but is not even indicated, in this case. The continuance of the original intention is thus a conclusive presumption of law, and when the testator, in the codicil, used the words "any *other* personalty," he must be taken to to have meant any personalty "other" than that bequeathed to Miss Pinckney by the will, as well as "other" than that given to his brother by the codicil.

ROBINSON, J., delivered the opinion of the Court.

By the fourth clause of his will, the testator directed his executors to invest the sum of ten thousand dollars in some safe security, and to pay the income thereof annually to Theodora Pinckney, so long as she remained unmarried. "My object," says the testator, "in giving this

legacy, is to show my grateful sense of the Christian sympathy in my sufferings, of one met in Rome several years since, and to testify to the influence for good of her inculcation and practice of the precepts of divine truth, in strengthening my efforts to seek the kingdom of God and his righteousness."

The will was executed at Madrid, in Spain, on the 17th of May, 1873.

After his return to this country, the testator on the 26th of February, 1876, made the following codicil:

"First. I revoke all devises and bequests given by me to my son, Claude Baxley, therein, absolutely, and in lieu thereof, I devise to him all my real estate for life; after his death, then to go to the trustees of the Johns Hopkins University, for them therewith to endow any medical professorship therein, they may think proper.

"Secondly. I bequeath to my brother, J. Brown Baxley, in lieu of the $1000 in said will given, the sum of $5000 for life; after his death, to go to said trustees of said University for said purpose.

"Thirdly. I bequeath the $15,000 in bonds in my box in bank and the money on deposit in the banking house of J. S. Gittings & Co., and any other personalty of which I am possessed, to the said trustees of said University for said purpose, hereby republishing said will in every other respect."

The question in this appeal, is whether the codicil revokes the legacy of $10,000 to Miss Pinckney, in the fourth clause of the will?

In determining the question of revocation of a will by a codicil, all the cases agree:

1st. That the codicil does not operate as a revocation of a devise or bequest in a will, unless there is an express clause of revocation, or unless the provisions in the codicil, are so inconsistent with the will, that the two cannot stand together.

2nd. If revocation is to be implied from inconsistent provisions, it will be limited to such provisions of the will, as are plainly inconsistent with the codicil.

3rd. Where the devise or bequest in the will, is clear and free from doubt, the intention to revoke by the codicil, must be equally clear and explicit. *Jones vs. Earle, Ex'r*, 1 *Gill*, 395; *Lee vs. Pindle*, 12 *G. & J.*, 305; *Douglas vs. Blackford*, 7 *Md.*, 8; *Doe vs. Hicks*, 8 *Bing.*, 475; 1 *Cl. & Fin.*, 20; *Alexander vs. Alexander*, 6 *De G., M. & G.*, 593; *Agnew vs. Pope*, 1 *De G. & J.*, 49; *Patch vs. Graves*, 3 *Drew*, 348; *Williams' Ex'rs*, (6th *Am. Ed.*, 220;) 4 *Kent*, 531.

The governing principle which lies at the bottom of these well settled rules, is the intention of the testator, to be ascertained from the face of the will and codicil, construed as one instrument. Apart from these general rules, where the question is one of intention, judicial decisions in other cases, afford but little assistance in the construction of testamentary papers, because it rarely happens, that two wills are expressed precisely in the same language.

Tested by these general principles, the question here is whether the gift to Miss Pinckney is revoked by the codicil.

So far as the will is concerned, there is no doubt of the testator's intention to give to her the interest on $10,000 during her single life. This is declared in plain and explicit terms, and the impulse which prompted the bestowal of it, is expressed with unusual earnestness and force. It will not be contended there is any clause in the codicil expressly revoking this gift.

The testator does revoke in *express terms* the *devises and bequests to his son Claude*; and in lieu thereof, he gives to him a life estate in the realty, with remainder to the trustees of the University.

He also *modifies the provision in favor of his brother, J. Brown Baxley,* and in lieu of the $1000, gives him $5000

for life, and after his death the $5000 to the University.

There is no reference whatever to the legacy to Miss Pinckney, and if it be revoked at all, it must be by the operation of the last clause in the codicil, in which he gives the $5000 in bonds, and his money on deposit, and such other personalty of which he was possessed at the time of his death to the University. Standing alone, this clause might be construed as a bequest of all other personal property belonging to the testator, not otherwise disposed of by the preceding clauses in the codicil. In the same clause, however, we find the testator ratifies and confirms his will in every other respect. By this, we understand him to ratify all the provisions of his will which are not inconsistent with the codicil. In order to ascertain the testamentary intention of the testator, it is necessary, therefore, to examine the provisions of the two papers, and see in what respects they are inconsistent with each other.

By the first clause of the will, the testator directs the sum of one thousand dollars to be paid to the trustees of Greenmount Cemetery, the income thereof to be expended in the preservation of his cemetery lot.

By the second, he provides that a " rough-hewn granite rock of large size," with an inscription to " H. Willis Baxley and Annabella Baxley, and their children," shall be prepared at the cost of his estate, and placed in said lot, and after the burial in said tomb of his son Claude, should he so select, he directs that his cemetery lot " shall be forever after closed to further interments."

There is no clause expressly revoking, nor is there a reference of any kind in the codicil to these provisions; and when they are read in connection with other parts of the will, in which the testator refers to the unhappy relations between himself and those who ought to have been nearest to him in life, it is unnatural and unreasonable to suppose he intended to revoke these provisions, and give the money thereby to be expended, towards the endow-

ment of a School of Medicine. And yet such is the appellants' contention.

And when we come to the fourth clause, in which the testator directs his executors to invest the sum of ten thousand dollars, the income thereof to be paid to Miss Pinckney so long as she remains unmarried, and in which he expresses the motives which prompted this bestowal of his bounty, his deep sense of gratitude for the sympathy manifested by her, in all his troubles and sufferings, it is equally improbable that he meant to revoke this gift, and confer it upon the University. We do find that he expressly revokes or modifies the provisions of his will, in regard to his son Claude and his brother; and if he intended to revoke the bequest in favor of Miss Pinckney, it is but reasonable to suppose that he would have done so in terms equally plain and explicit. Where a bequest is thus made in clear and unambiguous terms, it would be against every sound principle of construction, to permit such a gift to be revoked by doubtful expressions in a codicil. As a general rule it is said, that in order to revoke a clear devise, the intention to revoke, must be as clear as the devise. *Williams' Ex'rs*, (6*th Am. Ed.*,) 220; *Bosley vs. Bosley*, 14 *How.*, 395; *Quincy vs. Rogers*, 9 *Cush.*, 295; *Lee vs. Pindle*, 12 *G. & J.*, 288.

Construing, then the will and codicil together, it seems to us that the testator meant to revoke and alter the third and fifth clauses of his will, only, and by the last clause in the codicil, to give the rest of his personal property, not disposed of by the preceding clauses, to the trustees of the University, *subject, however, to the provisions of his will in regard to the protection and adornment of his burial lot, and subject to the legacy of* $10,000, *in favor of Miss Pinckney.*

This construction is consistent with the *general intent* in the codicil to endow a professorship in the University, and consistent, too, with the *particular intent* expressed in the

will, to bestow his bounty in part upon one, whom he declares to be pre-eminent y entitled to his gratitude. And in ratifying his will in all other respects, he meant to ratify all such provisions of the will, as were not plainly revoked or altered by the codicil. It was not his purpose, as the appellants contend, to make an absolute disposition of his entire property by the codicil, thus leaving no part of the original testamentary paper operative, except the clause appointing the executors. This would be to give to the codicil the effect and operation of a new will, out and out, and not as the testator meant it to be, merely an addition or supplement to his original will. If he intended to ratify only so much of the will as appointed the executors, then such ratification was altogether unmeaning and unnecessary, because the codicil made no change or alteration whatever in this respect.

Being of opinion, then, that the gift to Miss Pinckney is neither expressly or impliedly revoked by the codicil, the decree will be affirmed.

*Decree affirmed.*

(Decided 27th January, 1881.)