ELIZA M. SLOANE, Respondent, *v.* CALVIN AMORY STEVENS, Appellant.

The will of O'C., contained various devises and bequests to different parties, and also this clause: "I hereby release all claims or demands which I may have at my death against any person or persons named in *this* will." At the time of the execution of the will the testator was conducting, as counsel, a litigation for defendant; the latter was not named in the will. At the close of the will the testator revoked all former "wills and codicils." By a codicil, subsequently executed, which the testator described therein as the "first codicil to his last will," he released three persons named from all claims against them. Two of these were named in the will; one was not. Immediately following this was a provision giving to defendant, whom he described as his "faithful and honorable friend," all books, papers, etc., relating to the claim in litigation. In an action to recover for legal services rendered by the testator in said litigation *held*, that defendant was not released from liability by the said provision of the will.

The general rule that a will and codicil are to be taken and construed together as constituting one testamentary act, does not apply where anything appears in the instrument showing that the word "will" was not intended to cover or embrace the codicil.

(Argued June 21, 1887; decided October 11, 1887.)

APPEAL from order of the General Term of the Superior Court of the city of New York made February 7, 1887, which affirmed an interlocutory judgment overruling a demurrer to the complaint herein.

This action was brought by plaintiff as assignee of the executors of Charles O'Conor, deceased, to recover for professional services rendered by him as counsel for defendant in what was known and described as the "Tennessee Bond Cases."

The complaint set forth the will of O'Conor and a codicil thereto, alleged the rendition of the services and non-payment therefor.

The demurrer was based upon the ground that in and by the will defendant was released from all liability.

The material portions of the will and codicil are set forth in the complaint.

*John C. F. Gardner* for appellant. The original will and codicil together make one last will, in the same manner as if the original will were written anew, embodying the codicil, and then the whole executed anew. (*Washburn* v. *Sewell*, 4 Metc. 66; *Sherer* v. *Bishop*, 4 Brown's Ch. 55; *Byne* v. *Curry*, 2 Cr. & M. 603; 4 Thyrwhitt's Exch. 479; *Day* v. *Croft*, 4 Beav. 561; *Doe dem. York* v. *Walker*, 12 M. & W. 591, 599; 1 Williams on Exrs. [6th Am. ed.] 225; 1 Redf. on Wills [4th ed.] 368; 1 Redf. on Wills, chap. 8, § 6; *Perkins* v. *Micklethwaite*, 1 P. Wms. 274.) The codicil operates as its republication, and all of the will is presumed to be in the mind of the testator at the execution of the codicil. (1 Jarman on Wills [5th Am. ed.] 364; *Payne* v, *Payne*, 18 Cal. 291; *Jones* v. *Shewmaker*, 35 Ga. 151; *Duncan* v. *Duncan*, 23 Ill. 364; *Beall* v. *Cunningham*, 3 B. M. [Ky.] 390; *Armstrong* v. *Armstrong*, 14 id. 338; 4 Dane's Abridg. chap. 127,

art. 1, § 11, p. 550; *Haven* v. *Foster*, 14 Pick. 534; *Washburn* v. *Sewell*, 4 Metc. 63; *Brimmer* v. *Sohier*, 1 Cush. 118; *Tilden* v. *Tilden*, 13 Gray, 103; *Hosea* v. *Jacobs*, 98 Mass. 65; *Snow* v. *Foley*, 119 id. 102; *Brownell* v. *De Wolf*, 5 Mason [Me.] 486; *Van Cortland* v. *Kipp*, 1 Hill, 590; *Westcott* v. *Cady*, 5 Johns. Ch. 343; *Lynch* v. *Prendergast*, 67 Barb. [S. C.] 504; *Howland* v. *Un. Theo. Sem.*, 5 N. Y. 193; *Van Alstyne* v. *Van Alstyne*, 28 id. 375; *Murray* v. *Oliver*, 6 Ired. Eq. [N. C.] 55; *Collier* v. *Collier's Exrs.* 3 O. St. 369; *Cole* v. *Smith*, 4 Penn. St. 376; *Smith* v. *Puryear*, 3 Heisk. 706; R. S. chap. 3, § 3, p. 59; *Haven* v. *Foster*, 14 Pick. 534, 547; *Washburn* v. *Sewell*, 4 Metc. 63; *Gray* v. *Sherman*, 5 Allen, 198.)   Mr. O'Conor's intention to release Mr. Stevens can only be negatived by the contents of the codicil, showing by internal evidence, not that such intention had no existence, but that a contrary intent was entertained. (*Cole* v. *Smith*, *supra;* 1 Redf. on Wills [4th ed.] 368.)   In collecting, the intention of the testator courts are bound by precedent and authorities in point and upon identity of language, they are rather to follow settled authority than conjectural interpretation.   (*Myers* v. *Eddy*, 47 Barb. 263.)

*Albert G. McDonald* for respondent.   The dispositions made by a will are not to be disturbed by a codicil further than is necessary in order to give effect to the testator's intention in fact; and the will is affected only so far as there is repugnancy between it and the codicil, while in all other respects the purpose and intent of the testator manifested in the will are deemed to be unchanged.  (*Pierpont* v. *Patrick*, 53 N. Y. 595.)   Where a testator expresses in the codicil a determination to alter his will in one particular, he thereby negatives by implication, any intention to alter it in any other respect. (*Quincy* v. *Rogers*, 9 Cush. 296; *Wetmore* v. *Parker*, 52 N. Y. 462; *Alsop's Appeal*, 9 Penn. St. 374, 381; *Hopwood* v. *Hopwood*, 7 H. L. C. 740; 5 Jurist [N. S.] 897; *Garrett* v. *Garrett*, 2 Strob. Eq. [S. C.] 283; *Gold* v. *Judson*, 21 Conn. 616; *Abney* v. *Miller*, 2 Atk. 593; *Blundell* v. *Mead*,

1 Madd. 433 ; *All S. Coll.* v. *Coddington,* 1 P. Wms. 597 ;
*Cole* v. *Scott,* 16 Sim. 259 ; 1 McN. & G. 517 ; Dayton on
Surr. 145 ; *Stillwell* v. *Mallersh,* 20 L. J. R. [N. S.] Ch. 356 ;
5 Eng. L. & Eq. Rep. 185.)

FINCH, J.   One would hardly have expected that the will of
so eminent and able a lawyer as the late Charles O'Conor would
come before us for construction, and present a question quite
debatable and involving some difficulty.   He made his will,
about which as it stood at the date of its execution there was no
ambiguity, and which had the clearness and precision we were
certain to anticipate.   But fifteen months later, and about two
weeks before his death, he made and executed a codicil which
creates a serious difficulty, and, if drawn by him or at his
verbal dictation, may have some explanation in his failing
health.   By the terms of the will he released in its sixth clause
certain of his debtors, conveying his purpose in the following
language :   " I hereby release all claims or demands, which I
may have at my death, against any person or persons named in
*this* will."   In the codicil which he executed, his attention
was again drawn to his debtors, and his duty or pleasure as it
respected their indebtedness to him, for its fourth clause pro-
vides : " to Francis C. Barlow, Samuel Ward and Edmund
Elmendorf, Jr., respectively, I give any sums of money in
which any of them may chance to stand indebted to me at the
time of my death.   Notes, if found, etc., to be canceled and
delivered up."   Immediately following this is the provision out
of which the present controversy has arisen and which reads
thus : "All books, papers, duplicates, etc., having any relation to
the Tennessee bondholders' claims I give to my faithful and hon-
orable friend, C. Amory Stevens, to use in his discretion."   The
representatives of O'Conor have sued Stevens to recover
$50,000 for legal services of their testator, in the case referred
to.   The complaint sets out the will and codicil in full, and a
schedule of the services claimed, which ante-dated both the
will and the codicil, except the last item which is earlier than
the codicil by about a month.   The defendant has demurred,

insisting that by the terms of the will he is released and discharged from all liability. We cannot, therefore, stray outside of or beyond the allegations of the pleading. If there be extrinsic facts bearing upon the construction of the will and codicil, they are not now before us, and we must treat the case as if there were none material or admissible and be guided only by the words of the testator. The dispute turns upon the meaning of the phrase, "in this will," and seeks to evolve the sense in which it was used. The appellant argues that the will included the codicil, and the two instruments together constituted one testamentary act; that the execution of the codicil was a republication of the will as of that date, and the two instruments are to be read together as if their provisions had all been embodied in one, then for the first time executed, and that the testator thoroughly knew the rule and appreciated its force, and must be assumed to have intended when he released those "named in this will" to have intended to release also those named in any codicil which might thereafter be executed, and become part and parcel of the testamentary act. There is abundance of authority establishing the general rule, (*Sherer* v. *Bishop*, 4 Brown's Ch. Rep. 55; *Doe* v. *Walker*, 12 M. & W. 591; *Washburn* v. *Sewall*, 4 Metc. 63; *Van Cortlandt* v. *Kip*, 1 Hill, 590; *Caulfield v. Sullivan*, 85 N. Y. 153); and if it stood without limitation it would go far to justify the contention of the appellant. But while the word "will" may and often does cover codicils afterwards made, and embrace the entire testamentary act, it nevertheless, as frequently and more naturally is descriptive of the particular instrument as distinguished from that other and different instrument denominated a codicil. Where both instruments exist, however in the end and for many purposes they may constitute one testatmentary act, they are nevertheless properly described, the one as a will and the other as a codicil, and those are appropriate words to discriminate and distinguish between them. In such case a testator may mean by the phrase "this will" the instrument as first prepared and not as subsequently modified by a codicil; and since, in questions

of construction, the intention of the testator is to govern, it becomes necessary to determine in which sense he used the word. It has, therefore, been decided that the word "will" does not cover or embrace the codicil where anything appears to show that it was not intended to do so. (*Fuller* v. *Hooper*, 2 Ves. Sr. 333; *Cole* v. *Scott*, 19 L. J. R. [N. S.] 63; *Pierpont* v. *Patrick*, 53 N. Y. 591; *Wetmore* v. *Parker*, 52 N. Y. 450, 463.) These cases show the distinction between the will as a final testamentary act and the will as an instrument distinguished from another instrument called a codicil; and show that the former instrument will speak from its own date, and not from the death of the testator, where such an intent is manifest.

The testator seems to have had in mind this distinction, and discriminated between the two instruments. At the close of the will he formally revokes all previous "wills and codicils." He treats the two or more instruments not as together constituting wills and revocable by that name, but as separate and distinct instruments, and revokes not one but each, and by their appropriate and usual designation. The release which he gave came at the close of the will, and after he had named all to whom it was to apply. There can be no doubt that, when he executed the will in which Stevens was not named, he did not then mean to release the latter. If he subsequently formed a different intention we should expect to see it manifested. The failure to do so becomes more significant when we observe that he describes the codicil by that appropriate name saying: "This is Charles O'Conor's first codicil to his last will and testament. This instrument made and signed April 28, 1884." Words of release are absent as to Stevens although present as to others. Ward was not named in the will and so was released in the codicil. Stevens was not named in the will nor released in the codicil. Barlow and Elmendorf were named in the will and so discharged, but were again named in the codicil and again formally released. The appellant seeks to give a reason for this beyond forgetfulness on the one hand, or abundant caution on the other. He says the reason for the clause

was to require the delivery up and cancellation of notes, etc., held against Barlow and Elmendorf. But that provision is merely incidental and does not account for the words of release which, as to these two persons, were needless. To make the surrender of evidences of debt the motive of the clause is to elevate the incident to the place of the principal, or seize upon a casual and, perhaps, needless remark as the key of an argument or the doctrine of a judgment. Precisely why the two legatees already released by the will were released by the codicil it is not easy to determine ; but the materiality of the clause lies mainly in the fact that the attention of the testator was drawn to the case of his debtors, and so strongly drawn as to induce a repetition, and, nevertheless, in the next clause Stevens is named but without words of release.

An examination of that clause indicates a very distinct and definite purpose. In the progress of the Tennessee case the testator had doubtless accumulated important and material papers, his own briefs and memoranda being of great utility and value to his client. Mr. O'Conor had a lien upon all these papers for his compensation and probably realized that after his death his representatives might withhold them from a successor until the debt was paid or secured. But this step might be very troublesome and injurious to Stevens. The appeal to the Federal Court of last resort was approaching argument, and the prompt possession of the papers might be very important to the litigant deprived of his counsel by death. The testator had great confidence in Stevens, and so he gave the papers to him, thereby waiving his lien and calling his client "my faithful and honorable friend." His meaning seems to have been that he could trust Stevens to make a fair and honorable settlement without the coercion of a lien and the withholding of books and papers, and so the testator directed that course to be pursued. Of course this was a needless precaution if the debt was released for the lien would fall with it, and the naked surrender of the lien carries an implication of a purpose to retain the debt.

Recurring now to the will, certain portions of it become

important.   The release is of persons named in "*this* will;" not "in my will" as might have been the expression if the testator looked forward to codicils naming others, but in *this* will; that is, in the will which I now, on this day, make.   At that date a large part of the debt of Stevens had accrued. The testator knew him as one of his debtors and plainly then intended not to release or discharge him.   The persons to be discharged were identified by the phrase "named in *this* will;" not in some other will or codicil to be possibly thereafter made, but named in *that* will and so then and there identified.   That was the clear and certain construction of the words "in this will" when it was executed, and that meaning and legal effect cannot be changed by the codicil unless the codicil shows an intent to make the change.   This codicil does not.   Its intent points in the contrary direction.   Its purpose was other and different.   Our conclusion, therefore, is in harmony with that of the courts below.

The order should be affirmed, with costs, but with leave to the defendant, upon payment of costs, to withdraw his demurrer and serve an answer within twenty days from the entry of judgment.

All concur, except RAPALLO, J., not voting.

Order affirmed.