LEE *v.* IN THE MATTER OF THE ESTATE OF
ERMA BRUCE DAVIS, DECEASED

[No. 17, September Term, 1961.]

*Decided October 11, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*W. A. C. Hughes, Jr.,* with whom was *Milton B. Allen* on the brief, for appellant.

*William I. Gosnell,* for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal involves a construction of the last will and testament of Erma Bruce Davis, deceased.

The testatrix, who died on January 11, 1960, after providing for her interment and the payment of her debts, bequeathed certain government bonds, silver, china and glassware, linens and jewelry to a godchild, a grandniece of her husband and several friends. That clause of the will requiring interpretation provided in terms as follows:

"Item 5. I hereby give and bequeath to my dear friends, Robert R. Lee and Lena King Lee, his wife, all of my Stieff silverware; my crystal and amber blue glasses; one pair of pure jade earrings; and the right to select any pieces of personalty not specifically bequeathed herein, absolutely."

The residuary clause devised and bequeathed the residue and remainder of her estate to her "beloved husband" (for life with power to dispose of it either in his lifetime or by will), but, upon his death, or in the event he predeceased her, the testatrix directed a sale of the residue and the distribution of the proceeds, after the payment of $500 to the Young Women's Christian Association of Baltimore City, to her "beloved godchild." The husband of the testatrix predeceased her on October 27, 1958; and one of the legatees under item five (Robert R. Lee) predeceased the other legatee (Lena King Lee), who is the appellant here. The other parties in interest and the real appellees are the Y.W.C.A. and the infant godchild (Clarence O. Lewis, III).

Upon receiving a copy of the will after it had been probated, the appellant, as the surviving legatee under item five, sent the executor (Dallas F. Nicholas) a list of the property (not specifically bequeathed to other legatees) she had selected under the terms of the will. The list of thirty-two selections encompassed practically all of the property in the estate of the deceased and included, among other items, the leasehold property of the testatrix, her automobile and her bank accounts. The executor, in rejecting all of the selections, asserted that some of them were not personalty and that the testatrix had neither contemplated nor intended that such items would be included in the list of selections.

The case was submitted to the chancellor on an agreed statement of facts, in which, in addition to those hereinbefore related, it was further stipulated that when the will was executed, the leasehold property was owned by the testatrix and her husband as tenants by the entirety, and that the household furniture and equipment, with the exception of the items of a personal nature listed in the inventory, had been jointly acquired and were jointly owned on the date the will was made.

The stipulations do not indicate whether the automobile and bank accounts were also held jointly. Some of the specific bequests (excluding jewelry) were appraised at $1431.24, the automobile at $300, the household furniture and equipment and jewelry at $1449.50, and the leasehold property at $5500, all of which together with the cash on hand and in banks in the sum of $4729.25, totaled $13,409.99.

The lower court declared that the word "personalty" should be interpreted to include only other similar objects, such as "glasses, earrings, etc." And the surviving legatee under item five appealed. While there may be some doubt—as one of the appellees pointed out in the lower court—with regard to the power of the appellant to exercise alone the right to select granted to her and her husband now deceased, we shall assume without deciding, since no point was made of the question on appeal, that the appellant had such power and proceed to decide the question presented.

Since the problem presented stems from the phraseology of the will, the question is what was the intention of the testatrix when, in addition to bequeathing certain silverware, glassware and jewelry to the named legatees under item five, she further provided that the legatees should have the right to select any *pieces of personalty* not specifically bequeathed to others.

The appellant—who in effect contends that the word "personalty" includes all of the property of the testatrix (there was no real estate) which she had the power to dispose of at her death—insists that the word should be given its most sweeping possible technical meaning. We do not agree.

"For some purposes a will is considered to speak from its date or execution, and for others from the death of the testator, the former being the period of its inception, and the latter, that of the consummation of the instrument." 1 Jarman, *Wills,* 292; *Hammond v. Hammond,* 55 Md. 575 (1881); *Taylor v. Watson,* 35 Md. 519 (1872). "With regard to personal property, the law in this State has always been that the provisions of a will, insofar as they refer to personalty, speak as of the death of the testator, * * * but * * * this rule is subject to the intention of the testator, which may indicate

that the testator contemplated that his will should speak * * * [as of] the date of the execution of the will." Miller, *Construction of Wills,* § 34. And, if the question is one of intention, as it clearly is in this case, then the will must be construed as of the date it was written. Miller, *op. cit.,* § 39.

Where there is uncertainty, the intention must be found in the words of the will interpreted in the light of the circumstances surrounding the testator at the time the will was executed. And when the intention is not readily ascertainable on the face of the will, the court may, by placing itself in the armchair of the testator, inquire into the peculiar situation of the testator and the relations between him and the objects of his bounty so that the court, by seeing the circumstances and appreciating his surroundings, may more accurately interpret the real meaning of the words of the testator. Miller, *op. cit.,* § 12, and the cases cited by the author in the footnotes, for example, *Burt v. Gill,* 89 Md. 145, 42 Atl. 968 (1899) ; and *Frick v. Frick,* 82 Md. 218, 33 Atl. 462 (1895). See also the recent cases of *McIntyre v. Byrne,* 217 Md. 71, 141 A. 2d 692 (1958) ; *Marty v. First Nat'l Bk. of Balto.,* 209 Md. 210, 120 A. 2d 841 (1956) ; and *Hebden v. Keim,* 196 Md. 45, 75 A. 2d 126 (1950).

Thus, when the situation of the testatrix in this case is viewed from her standpoint when the will was written, particularly with respect to the nature and extent of the property she knew she had an absolute right to dispose of—see *Stannard v. Barnum,* 51 Md. 440 (1879), and *Littig v. Hance,* 81 Md. 416, 32 Atl. 343 (1895)—we think it is evident that in making the specific bequests set forth in the will, she intended to bequeath only such items of tangible property, personal in nature, as she then owned in her own right.

In the first place, the very words of the controversial bequest—any pieces of personalty—tend to disprove the claim of the appellant to practically all of the residue, for the adjective *any,* as it was used in item five with the plural noun *pieces,* contemporarily means "some, no matter which" pieces of personalty. Obviously, the term, in the context used, did not mean *all* of the personalty not otherwise disposed of.

Again, on the face of the will itself, it is not without sig-

nificance that the testatrix, in making each of the specific bequests, including that to the appellant, invariably described the item given as "my" government bonds, "my" jewelry and so on: a clear manifestation of an intention to bequeath only those pieces of personalty she personally owned.

Furthermore, in considering the surrounding circumstances which were known to the testatrix when the will was made —particularly the fact that most of the property she and her husband had acquired (other than her personal belongings) was held by them jointly or as tenants by the entirety, and the further fact that should her husband predecease her, the title to the whole would devolve upon her and pass under her will to the two ultimate residuary legatees—we think it was most unlikely that the testatrix had contemplated or intended that the residual gifts of the cash legacies to the Y.W.C.A. (in which she had been interested for years) and to her godchild (who, next to her husband, was the principal person she wanted to have the bulk of her estate) should ever abate in order to satisfy the claimed right of her "item five" friends to select practically all of the residue of her estate.

Finally, while it is true that the term "personal property" or "personalty" embraces every object and right which is capable of ownership except a freehold estate in land and an incorporeal hereditament issuing out of or exercisable within such estate, *Elkton Electric Co. v. Perkins,* 145 Md. 224, 125 Atl. 851 (1924), it is also true that in many cases, as it is here, the broad meaning of the term is restricted by the context in which it apears if there is a clear indication, either in the will itself or in the circumstances existing at the time of its inception, of an intention to so limit the term. Miller, *op. cit.,* §§ 102, 101.

In *Obetz v. Boatmen's Nat. Bank of St. Louis,* 234 S. W. 2d 618 (Mo. 1950), where the testatrix had bequeathed all of her clothing, jewelry and "personal property" not otherwise disposed of, it was held that the testatrix did not intend to dispose of her stocks, bonds and cash under the term used but only those items of tangible property as were personal to her, such as those which the testatrix had personally used for her comfort and adornment. See also *In re Cowden's*

*Estate,* 51 P. 2d 1165 (Cal. App. 1935), [bequest by sister to brother of money, clothing and "personal property" was limited to personal effects including only jewelry and other articles of personal adornment where construction of term "personal property" in legal sense would defeat other specific bequests] ; and *In re Combs' Estate,* 28 P. 2d 711 (Cal. App. 1934) [bequest of "personal property" by mother to daughter was limited to include only such goods and chattels and tangible things as were subject to personal use where provision for other children would have to abate].

As we see it, the correct interpretation of the term "any pieces of personalty" requires that the selections heretofore made by the appellants must be limited to include only such items of tangible property as were owned by the testatrix in her own right when the will was made.  But since it appears that the determination of such items will require either an additional agreed statement of facts or the taking of testimony and the passage of a more comprehensive decree, the case will be remanded for further proceedings without affirming or modifying the declaratory decree appealed from. Maryland Rule 871.

> *Case remanded for further proceedings without affirmance or modification of decree; appellant to pay the costs.*