VEDITZ *v.* ATHEY ET AL.

[No. 321, September Term, 1964.]

436

*Decided July 13, 1965.*

*Motion for rehearing filed and denied July 28, 1965.*

The cause originally was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ., and reargued before the entire Court.

*Charles G. Page* and *J. Calvin Carney* (on both arguments) for the appellant.

*Daniel H. Honemann* (on both arguments), with whom were *Hinkley & Singley* on the brief, for the appellees.

OPPENHEIMER, J., delivered the majority opinion of the Court. PRESCOTT, C. J., and HORNEY and SYBERT, JJ., dissent. Dissenting opinion by HORNEY, J., at page 450, *infra.*

The testatrix, in Item Second of her Will, bequeathed household furniture and personal effects to one niece. In her Second Codicil, the testatrix provided in part as follows: "FIRST: * * * I therefore modify Item Second of my said Will by adding thereto the following sentence: * * *" The sentence devised a one-half interest in certain real estate in the Severna Park area

to another niece, if she survived the testatrix. In her Third Codicil, the testatrix revoked Item Second of her Will and substituted in place thereof a bequest to the second niece of all her personal property, with certain exceptions, located in the real estate referred to in her Second Codicil. The second niece, Marie Veditz, the appellant herein, (Marie), instituted proceedings in the Circuit Court for Anne Arundel County for a construction of the Will and Codicils. The court below held that the devise to Marie contained in the Second Codicil had been revoked. Marie has appealed from that decree.

The testatrix, Matilda Held, died, unmarried, on October 16, 1962, at the age of 94. Her next of kin were the two nieces, Rosa Fenner (Rosa) and Marie. Rosa was the daughter of a deceased sister of the testatrix, was married at the time of the testatrix's death, and had three sons. Marie was the adopted daughter of another deceased sister of the testatrix and was unmarried.

The testatrix left a will and three Codicils, which were duly probated in the Orphans' Court of Anne Arundel County, as follows:

(a) Will dated May 23, 1955.
(b) First codicil dated July 12, 1955.
(c) Second codicil dated May 8, 1958.
(d) Third codicil dated August 6, 1958.

Item Second of the Will reads as follows:

"SECOND: I give and bequeath unto ROSA FENNER, daughter of my deceased sister, Emma Jochum, all of my furniture, silver, china, jewelry, linens and all other personal and household effects, with the exception of those articles hereinafter specifically described and bequeathed, to be hers absolutely, provided that she survives me. If the said Rosa Fenner does not survive me, then I direct that her descendants living at the time of my death shall take in equal shares per stirpes the legacy which she would have received under this paragraph of my Will."

The Will then sets forth legacies and bequests to various persons, including a bequest of $500 to Marie if living. By Item Thirteenth of the Will, all the rest, residue and remainder of the testatrix's property is left to the Maryland Trust Company (now the Maryland National Bank) in trust for the benefit of Rosa for life; upon her death, after a bequest of not over one-half of the corpus or $5,000, whichever is less, to the Rev. John McPherson and his family, the remainder of the corpus is bequeathed to Rosa's sons or their respective living descendants. By Item Eighteenth the testatrix nominated the appellees, Charles E. Athey and the Maryland National Bank, her Executors. These Executors duly qualified.

The First Codicil contained a number of bequests of articles of furniture to various legatees, including Marie. Item First of the Second Codicil reads as follows:

> "FIRST: Since executing my said Will and Codicil, I have acquired the property known as 411 Laurel Road, Severna Park, Maryland. I therefore modify Item Second of my said Will by adding thereto the following sentence:
>
> > 'I give and devise unto my neice, MARIE VE-DITZ, to be hers absolutely provided that she survives me, any interest which I may own at the time of my death in the property known as 411 Laurel Road, acquired by me on October 1, 1957, from Nelle E. Gardner.' "

The real estate referred to in Item First of the Second Codicil was a house which the testatrix had purchased on October 1, 1957. On October 15, 1957, fifteen days after she acquired this property, she executed a strawman deed resulting in the conveyance of a one-half interest in the property back to herself for life with the remainder to Marie in fee, subject to a power reserved in the testatrix to mortgage, convey and appoint. Outright ownership of the other one-half interest remained in the testatrix. The testatrix during her lifetime did not exercise the powers vested in her as life tenant as to the undivided one-half interest and on her death this undivided interest vested in fee simple in Marie as remainderman. The testatrix's Second

Codicil was executed approximately seven months after the strawman deed, to which reference has been made.

Item First of the testatrix's Third Codicil reads as follows:

"FIRST: I revoke Item SECOND of my Last Will and Testament and substitute in place thereof the following:

'SECOND: I give and bequeath unto my niece, MARIE VEDITZ, all of my furniture, silverware, china, jewelry, linens and other personal and household effects located in my home at 411 Laurel Road, Severna Park, Maryland, with the exception of those articles specifically described and bequeathed in my Last Will and Testament or Codicils thereto, to be hers absolutely.' "

The concluding paragraph of the Third Codicil reads as follows:

"FINALLY: In all other respects I do hereby ratify and confirm the provisions of my said Last Will and Testament executed on May 23, 1955, as modified by the First Codicil thereto executed on July 12, 1955, the Second Codicil executed on May 8, 1958, and by this Codicil."

The Will and the first two Codicils were prepared by Mr. Frederick J. Singley, Jr. and the third Codicil was prepared by Mr. John H. Somerville; both lawyers were partners in the firm of Hinkley and Singley.

After Miss Held's death, when it became evident that a dispute existed as to the one-half interest in 411 Laurel Road, by agreement, the property was sold. One-half of the net proceeds in the amount of $11,250 was deposited in a savings account to be held by the Executors until the determination of this case. Miss Held's gross estate, including the other one-half of the proceeds of the sale of 411 Laurel Road, was $116,445.22. The testatrix's furniture and chattels were appraised at $786.30. Apart from her claim to the other one-half of the proceeds of the sale of the real estate, Marie became entitled to assets, including the proceeds of her one-half interest in 411 Laurel Road,

a legacy of $500, the specifically bequeathed furniture and chattels, and certain bank accounts which she received by survivorship, in the total amount of $26,770.69. The evidence as to the value of the testatrix's estate and various items thereof was first excluded by the lower court, upon objection of the Executors, but the objection was later withdrawn. The evidence as to the relationship of the two nieces, the acquisition of the real estate, and the strawman deed in connection therewith, was admissible as extrinsic evidence pertaining to the circumstances of the testatrix, the objects of her bounty and the nature of the property involved. *Shellady, Inc. v. Herlihy, Executor,* 236 Md. 461, 465, 466, 204 A. 2d 504 (1964) and authorities therein cited.

During the trial, the appellant, Marie, proffered testimony of a number of persons, including that of Mr. Athey the co-executor under the Will, to the effect that they had heard the testatrix make comments indicating an intent that Marie should succeed to the entire property, 411 Laurel Road. These alleged declarations by Miss Held were made from the time immediately prior to the purchase of the property to periods shortly before her death. Testimony of another witness was also proffered to the effect that the testatrix had stated just before she purchased the property that she was buying it so that Marie would have something in her old age. The court below excluded all this proffered testimony on the ground that, where the intention of testator clearly appears from the words used in the testamentary documents, extrinsic evidence that something different was meant than that which the language imports is inadmissible. The court ruled further that no latent ambiguity exists in the testamentary documents in this case. During the trial, Mr. Somerville had been called by Marie's counsel and testified as to what took place in his office between the testatrix and himself when the Third Codicil was prepared and executed. Judge Sachse, in his opinion, excluded this testimony.

In his opinion, Judge Sachse held that, under the law, Item Second of the Will became Item Second as modified by the Second Codicil thereto and that any reference thereafter to such Item of the Will referred to it as modified by the Second Codicil. He held that, in Item First of the Third Codicil, the testa-

trix by referring specifically to her Will and the First and Second Codicils, giving the dates thereof, definitely showed that she knew of and recognized the Second Codicil which changed Item Second of her Will. The judge concluded that by her Third Codicil the testatrix revoked Item Second of her Will as it was modified and changed by her Second Codicil and that, therefore, the one-half interest in the real estate, which is the subject of this litigation (now the one-half of the net proceeds of the sales thereof), is vested in the Maryland National Bank as Trustee under the residuary provisions of the Will.

The appellant contends that the lower court erred in holding that the words in the Item First of the Third Codicil had a single, clear meaning. It is her position that this Item of the Third Codicil was meant to refer only to the document dated May 23, 1955, titled the Last Will and Testament, and not to that document as modified by the Item First of the Second Codicil, and that, on its face, the Third Codicil did not revoke Item First of the Second Codicil. She contends that the failure of the Third Codicil to mention the devise in Item First of the Second Codicil is proof that neither the testatrix nor the draftsman had the devise in mind when the Third Codicil was executed. Finally, the appellant contends that the proffered evidence which was excluded was relevant to the issues and should have been considered because some of the excluded testimony was evidence of the circumstances surrounding the testatrix at the time the Will and the respective Codicils were executed and because the other proffered testimony was corroborative of the claimed belief of the testatrix that she was devising her retained interest in 411 Laurel Road to Marie, or because it would have assisted the court in determining what was the express intent of the testatrix.

We disagree with each of the appellant's contentions, for the reasons which follow.

The intent and effect of Item First of the testatrix's Second Codicil are clear. She modified Item Second of her Will by adding a sentence thereto. That Item of her Will, as originally written, bequeathed certain personal effects to Rosa, if living, and if not living, to her descendants. The sentence added by the Codicil contained a devise to Marie of the testatrix's interest

in 411 Laurel Road. Thereafter, the provisions for the two nieces stood together, as Item Second of her Will. Item First of the Second Codicil had performed its function. The intention of the testatrix to add the devise to Marie to the legacy to Rosa and to have the two testamentary dispositions stand together as Item Second of her will was expressed in apt words, contravened no legal principle, and was legally effective. See *Shellady, Inc. v. Herlihy, Executor, supra* at 236 Md. p. 471, and cases therein cited.

By Item First of her Third Codicil, the testatrix expressly revoked the Item Second of her Will, and substituted in place thereof a bequest to Marie of all the testatrix's personal effects in her home at 411 Laurel Road, with the exception of those articles specifically described and bequeathed in her Will or Codicils. Express revocation of a clause of a will by a subsequent will or codicil is one of the methods of revocation recognized in Maryland. Code (1957), Art. 93, § 351; *Syfer v. Dolby*, 182 Md. 139, 150, 32 A. 2d 529 (1943) ; *Hunter v. Baker*, 154 Md. 307, 316, 141 Atl. 368 (1928) ; *Woodstock College v. Hankey*, 129 Md. 675, 683, 99 Atl. 962 (1917). The first paragraph of the Third Codicil declares it to be a codicil to the Will and the First and Second Codicils. All three of these prior testamentary documents are referred to by name and by their respective dates. The Second Codicil, so specifically referred to, had modified the Item Second of the Will by adding the devise to Marie to the bequest to Rosa. The Third Codicil expressly revoked this Item in the manner authorized by statute and necessarily, by its terms, revoked the entire Item of the Will as it then stood. To hold that the devise to Marie, previously added to the Item of the Will by the Second Codicil, survived the revocation of that Item would be to disregard the plain meaning of the words of the testatrix. The directions of the testatrix, set forth in a manner authorized by law, must of necessity control. *Syfer v. Dolby, supra; Stein v. Safe Deposit & Trust Co.*, 127 Md. 206, 217, 96 Atl. 349 (1915) ; Miller, *Construction of Wills*, § 9.

The appellant contends that the word "will" in the Third Codicil does not necessarily mean the composite of all testamentary documents in existence at the death of the testator, but rather is to be taken as referring only to the first testa-

mentary document, entitled "Last Will and Testament," dated May 23, 1955. She argues that, because in her Third Codicil, the testatrix did not in terms revoke Item First of the Second Codicil, she did not intend to do so. As has been pointed out, the Third Codicil expressly states that it is a codicil to all three of the prior testamentary documents, including the Second Codicil. The terms and effect of the Second Codicil upon Item First of her Will are clear. To argue that the Third Codicil was only meant to affect the original Will, without the modification effected by the Second Codicil, is to assume that the testatrix was unaware of the unequivocal meaning of the Second Codicil to which she specifically referred. The appellant, in effect, would have us hold that a testamentary disposition added to a particular clause of a will by an intermediate codicil survives a subsequent codicil revoking the clause in the will, unless there is a specific revocation of the intermediate codicil. Such a holding would be contrary to the established principles of testamentary construction, under which testators are taken as meaning what they clearly say. It would necessitate, for an effective revocation of a clause in a will, a specific reference to each change made in that clause by intermediate codicils, and an express direction as to whether or not such intermediate changes were to survive that revocation. That is not the law. The law assumes that when a testator expressly revokes a clause in his will, particularly when in so doing he refers to the intermediate codicils which have modified that clause, he is doing what his words clearly imply—revoking the clause in its entirety, as it stood, with all the intermediate changes, at the time of revocation. To hold otherwise would impose a new and unnecessary burden in the drafting of wills and codicils and might well cast doubt upon testamentary documents which death has made final.

It is conceded in this case that the Third Codicil was prepared for the testatrix by an experienced and competent lawyer, a partner in a firm which specializes in trust and estate law. In *Judik v. Travers*, 184 Md. 215, 225, 40 A. 2d 306 (1944), we said:

"Where a will is drawn by one learned in the law and skilled in the use of its terminology, the words

employed will be considered as having been delib-
erately chosen to express the testator's intention and
will ordinarily be given their accustomed technical
meaning. *Buchwald v. Buchwald,* 175 Md. 103, 111,
199 A. 795; *Wiesenfeld v. Rosenfeld,* 170 Md. 63,
183 A. 250." 184 Md. at 225.

It is true, as a general legal principle, that a word used in
a testamentary document does not necessarily have a fixed and
unalterable meaning; the testator is entitled to use words as
he pleases to make his meaning clear. Wigmore, *Evidence,* 3rd
Ed. §§ 2461, 2462. "Even where technical words are used,
though the testator will be ordinarily presumed to have used
them in their legal sense, a different meaning will be given to
them when the context clearly indicates that such technical im-
port would defeat his manifest intention." *Albert v. Albert,* 68
Md. 352, 366, 12 Atl. 11 (1888). This principle is only a cor-
ollary of the basic doctrine that the testator's intent, when
clearly expressed in a testamentary document, must prevail. In
this case, for the reasons we have given, we hold that the in-
tention of the testatrix was expressed in apt and certain terms.
To hold that doubt exists as to the meaning of the revocation
in the Third Codicil because the testatrix did not specifically
revoke the sentence added to the Will by the Second Codicil
would be to extend the eighteenth century formalism which the
appellant justly criticizes.

The appellant's counsel, in their able brief and argument, ad-
mit they have found no authority precisely in point on this sub-
ject. They contend, however, that authorities involving the ef-
fect upon an amendment of a repealer and re-enactment of a
statute are relevant, citing *Hensley v. Bethesda Metal Co.,* 230
Md. 556, 561, 188 A. 2d 290 (1963) and an annotation in 77
A.L.R.2d 336, 355. We do not agree as to the relevance of
these authorities. Here, we are dealing with an express revo-
cation, not with the question of whether or not there has been
a repeal or ratification by implication.

*Thomas v. Levering,* 73 Md. 451 (1891), cited by the ap-
pellant, involved the question of whether two codicils revoked
a will by implication; at p. 455, we said: "We look in vain to

find any language in them [the codicils] which bears any semblance to an express revocation * * *" In *Johns Hopkins University v. Pinckney,* 55 Md. 365 (1881), referred to in *Thomas,* the question again was whether a codicil operated as a revocation of a devise or bequest in a will by implication; we pointed out that the codicil contained no clause expressly revoking the gift in the will, and contrasted the clause in the codicil involved with other clauses which revoked other devises and bequests in express terms.

The appellant cites *Sloane v. Stevens,* 107 N. Y. 122, 13 N. E. 618 (1887) in support of her contention that the word "Will" as used in the Third Codicil does not have a single clear meaning. In that case, the testator, in his will, released all claims or demands which he might have at his death against any person named in the will. In a subsequent codicil, he left certain papers to a named friend. After the testator's death, his representatives sued the friend on a claim of $50,000. The defense was that the friend was one of the persons named in the will and was therefore released from all claims. The court held the defense to be without merit, on the ground that the word "will" does not embrace the codicil where it appears that it was not intended to do so, and that the testator, by putting the release at the end of the will, showed that the release was intended to apply only to those persons named in the particular document. We do not regard the *Sloane* decision as in point in this case. The question there was only one of implied intent in the codicil; the codicil did not expressly modify the clause of the will involved. It did not, in terms, add the name of the friend to the list of persons named in the will. In this case, in contrast with *Sloane,* the testatrix, in terms, added the devise to Marie to the clause in the Will which she subsequently revoked.

The appellant contends that the final clause of the Third Codicil constitutes a ratification of the Second Codicil, because that clause confirms the provision of the Will of the testatrix, giving its date, whereas Items First and Second of the Third Codicil refer to the Will without date. The first or publishing paragraph of the Third Codicil refers to the Will and First and Second Codicils, giving the date of each; Item First revokes Item Second of the Will, substituting a bequest, and the Item

Second of the Codicil modifies a subparagraph of Item Third of the Will. For the testatrix to have repeated the date of her Will in these Items of the Codicil, after she had previously referred to its date in setting forth her prior testamentary documents and when she again referred to the dates of all three documents in the final clause of the Codicil, would have been mere redundancy. Her familiarity with the effect of the prior Codicils is indicated not only by her specific references to them but by the language which, in Item First of her Codicil, she substituted for the revoked Item Second of the Will. In that substituted language, bequeathing furniture and other personal effects to Marie, she expressly excluded "those articles specifically described and bequeathed in my Last Will and Testament or Codicils thereto * * *" Item First of the First Codicil contained eight specific bequests of carefully described furniture and other personal articles, which were in addition to other bequests of similar articles in the Will. The final clause of the Third Codicil ratified and confirmed the provisions of the Will "as modified" by the First and Second Codicils, and by the Third. Rather than an indication of an intent to ratify the devise contained in the Second Codicil, the Third Codicil, taken in its entirety, as well as the express words of revocation contained in Item First, convinces us that the testatrix used the words of revocation precisely, with full knowledge that the devise to Marie in the Second Codicil had become a part of the revoked Item of the Will.

In *Syfer v. Dolby, supra,* we considered the nature of a codicil, and cited with approval the holding in *Lee's Estate,* 16 Pa. Super., 627 (1901), as follows:

> "Where a testator in a codicil revokes a provision of his will, and in a second codicil referring to the will by date says: 'I do confirm my said will in all respects, except so far as the same is changed by this codicil,' he does not by the second codicil reestablish the provision in the will which had been revoked by the first codicil. *Lee's Estate,* 16 Pa. Super. 627." 182 Md. at 149.

In *Green v. Tribe,* L.R. 9 Ch. Div. 231, 238 (1878), referred to in *Lee's Estate, supra,* Fry, J. said:

"The character of a codicil is very peculiar. Its nature is not substantive but adjective. It is, as Mr. Justice *Blackstone* describes it (1), 'a supplement to a will, or an addition made by the testator, and annexed to and to be taken as part of a testament.' A reference to the will therefore in itself carries with it a reference to that which is merely a supplement to or annexed to the will itself; and the mere fact that the testator describes the will by a reference to its original date, does not seem to me sufficient to exclude the inference that the will referred to is the will as modified by the codicils." 9 Ch. Div. at 238.

In this case, the inference that the Will referred to in the final clause of the Third Codicil is the Will as modified by the Second Codicil is strengthened by the additional internal evidence to which reference has been made.

The appellant complains that the chancellor, in his opinion construing the Third Codicil, did not consider the Will and Codicils as a whole. The general principle in the construction of wills is that all parts of a will are to be construed in relation to each other, so as, if possible, to form one consistent whole. The cardinal policy is to carry out the intention of the testator as deduced from the four corners of the will. *Shellady, Inc. v. Herlihy, Executor, supra,* 236 Md. at 471; *McElroy v. Mer.-Safe Dep. Co.,* 229 Md. 276, 283, 182 A. 2d 775 (1962); *Albert v. Albert,* 68 Md. 352, 365-66, 12 Atl. 11 (1888) and cases therein cited. However, we find nothing in the Will and Codicils of the testatrix, taken as a whole, which casts doubt upon the clear intent we have found to be expressed in the Third Codicil.

The Will and the Codicils show the close relationship between the testatrix and Marie, her adopted niece. They also show, however, that Rosa, the natural niece, is the major beneficiary. The greater part of the residuary estate is for the benefit of Rosa and her family. The appellant points to the provision in the Second Codicil, in which the testatrix left her burial lot at Loudon Park Cemetery in trust to permit the interment therein only of the testatrix and Marie, as proof of the intimacy

between them. That the intimacy existed is indubitable, but Marie, like the testatrix, was unmarried, without immediate family; the arrangements as to the burial lot were natural under the circumstances, however great the affection of the testatrix for Rosa, who had her own family.

The testatrix also stresses the financial disparity between the value of the devise to Marie of the one-half interest in 411 Laurel Road added to the Will in the Second Codicil and the bequest to Marie in the Third Codicil of the furniture in the house. The one-half interest in the real estate realized $11,250; the furniture bequeathed to her was valued at approximately $500. However, when the testatrix revoked Item Second of her Will which had been modified to include the devise, the interests in the real estate only reverted to what they had been a few months before, when the testatrix had given Marie only a one-half remainder interest, subject to a power in the testatrix which she did not exercise. The effect of the Third Codicil, as far as the real estate was concerned, was to revert to that situation. By not exercising her reserved power, the testatrix divided her real estate equally between Marie and her residuary estate, of which Rosa, her other niece, with her family, was a principal beneficiary. Nothing in the Will indicates that this final disposition was not in accord with the testatrix's wishes.

The appellant argues that the gift of the furniture in the house to Marie shows that the testatrix wished Marie to have the house itself. This does not follow. Marie testified that, although she often visited the testatrix, she never lived at 411 Laurel Road. The testimony showed that Marie had some of her own furniture in the house, constituting about one-third of all the furniture therein. The bequest eliminated any problems of separation. A gift of the contents of a house does not necessarily indicate an intent to give the house itself.

The chancellor properly excluded the proffered testimony as to the declarations of the intent of the testatrix, both before she bought 411 Laurel Road and at the times the Will and Codicils were executed. The admissibility of such evidence is restricted to cases of uncertainty, where the intention of the testator is not clearly ascertainable on the face of the will. *Shel-*

*lady, Inc. v. Herlihy, Executor, supra,* 236 Md. at 474; *Lee v. Estate of Davis,* 226 Md. 416, 420-21, 174 A. 2d 79 (1961) ; *Lederer v. Safe Dep. & Tr. Co.,* 182 Md. 422, 430, 35 A. 2d 166 (1943) ; Miller, *op. cit.* §§ 8-12; or where there is a latent ambiguity. *Darden v. Bright,* 173 Md. 563, 568-570, 198 Atl. 431 (1938) ; Miller, *op. cit.* §§ 42-45. Neither of those conditions is here present. Evidence of what transpired between the testatrix and her attorney when the Third Codicil was being prepared was properly excluded for the same reason.

> *Decree affirmed; costs to be paid out of the estate.*

HORNEY, J., filed the following dissenting opinion, in which PRESCOTT, C. J., and SYBERT, J., concurred.

The majority, by applying a rule of construction rather than the process of interpretation in construing the last will and testament of Matilda Held, deceased, and the codicils thereto, have, in my opinion, unwittingly rewritten the testamentary disposition of a one-half interest in the home of the testatrix. To use as apt colloquialism, they have put the cart before the horse.

The interpretation of a will involves the process of ascertaining, from a reading of all the testamentary writings and, if necessary, a consideration of extrinsic evidence pertinent thereto, the meaning or intention of the testator as expressed in the will and codicils. And where, as here, an interpretation of the will as a whole fully discloses the clear intent of the testator, further inquiry is not necessary. A rule of construction, on the other hand, since it seeks to assign an intent to the words used, necessarily involves an attempt to formulate a permissible intent for the testator by the use of presumptions. This process should not be resorted to, however, unless the intention of the testator as to a particular devise or bequest is doubtful or uncertain and therefore inconclusive. *Davis v. Mercantile-Safe Deposit Co.,* 235 Md. 266, 201 A. 2d 373 (1964) ; *Judik v. Travers,* 184 Md. 215, 40 A. 2d 306 (1944). See also *Page on Wills* (Bowe-Parker Rev.), § 30.3; 20 Wash. & Lee L. Rev. 104.

The distinction between the two processes was set forth in *Davis* (at p. 269), in this way:

"It is axiomatic that the ascertainment of the intention of the testator is the controlling factor in construing a will. * * * If the *intention can be satisfactorily ascertained* from a reading of the will, further inquiry is not necessary. * * * If it cannot, the rules of construction may be invoked to ascertain the meaning or intention of the testator as expressed in the will." (Emphasis added.)

In *Judik,* it was said (at p. 221), "it is only when the *verbal expressions are of doubtful meaning* that the rules or canons of construction may be invoked, and even these rules have no binding force, being mere guides to aid in the discovery of this all important element of intention." (Emphasis added.)

It seems clear to me, from a reading of the will and codicils, that the testatrix never had any intention of revoking the first item of the second codicil by which she devised to her niece, Marie Veditz, "to be hers absolutely provided she survives me," whatever interest the testatrix had at the time of her death in the property known as 411 Laurel Road in Severna Park. On the contrary, it is apparent that the execution of the second codicil was the expression of an unequivocal intention to vest the niece with a fee in the whole property upon the death of the testatrix [1] and that the execution of the third codicil, instead of expressing an intention to revoke the devise, was in fact the expression of an intention to substitute Marie Veditz (an adoptive niece) for Rosa Fenner (a natural niece) as the recipient of all the personal and household effects (not otherwise specifically bequeathed) located in the home of the testatrix.

Along with numerous gifts of cash, shares of stock, jewelry and personal effects made to relatives and friends in other items of the original will (dated May 23, 1955), including a cash bequest to the adoptive niece, the testatrix, by the second item thereof bequeathed to the natural niece, all of her personal and

---

1. Shortly after acquiring the property the testatrix caused the execution of strawman deeds by which she retained a one-half interest in fee and vested the other one-half interest in herself for life with remainder to her niece in fee subject to certain powers which were never exercised.

household effects except such articles as were therein specifically bequeathed to other relatives and friends.

Subsequently (on July 12, 1955), the testatrix added other specific bequests of household furnishings to the third item of the original will, bequeathed the adoptive niece all cut glass and china in the dining room and other specified household effects, and in all other respects, except as to certain modifications with respect to the bequest of the shares of stock, ratified and confirmed the provisions of the will.

Sometime thereafter (on May 8, 1958), having acquired the property which is the subject of this litigation in the meantime, the testatrix executed the second codicil. Therein she *modified* the second item of the will (bequeathing personal and household effects to the natural niece), by adding the sentence devising her interest in the subject property to the adoptive niece. And, after also adding a new subparagraph to the provisions of the third item of the will *as modified by the first codicil* (giving gifts and bequests to friends), the testatrix left her cemetery lot to the cemetery company in trust, and then ratified and confirmed the provisions of the will as modified by the first codicil.

On August 6, 1958, the testatrix executed the third and last codicil, the relevant parts of which read as follows:

"I, Matilda Held, * * * do hereby make, publish and declare this to be a Third Codicil to my Last Will and Testament executed on May 23, 1955, a First Codicil thereto executed on July 12, 1955, and a Second Codicil thereto executed on May 8, 1958.

First: I revoke Item Second of my Last Will and Testament and substitute in place thereof the following:

'I give and bequeath unto my niece, Marie Veditz, all of my furniture, silverware, china, jewelry, linens and other personal and household effects located in my home, * * * with the exception of those articles specifically described and bequeathed in my Last Will and Testament or Codicil thereto, to be hers absolutely.'

Second: Item Third, sub-paragraph (a) of my Last

Will and Testament is hereby modified to read as follows:

'(a) Unto Henry Wright, * * * the sum of Five Hundred Dollars ($500.00) to be his absolutely, provided that he survives me, in appreciation of his kindness.'

Finally: In all other respects, I do hereby ratify and confirm the provisions of my said Last Will and Testament executed on May 23, 1955, as modified by the First Codicil thereto executed on July 12, 1955, the Second Codicil executed on May 8, 1958, and by this Codicil.

* * *

Signed, Sealed, Published and Declared by the above-named Testatrix, Matilda Held, as and for a Third Codicil to her Last Will and Testament executed on May 23, 1955, in the presence of [John H. Somerville and James P. Walsh], who, at her request, in her presence, and in the presence of each other, have hereunto subscribed our names as witness thereto."

John H. Somerville, Esq., prepared the codicil in the absence of the attorney who had prepared the original will and the first and second codicils. Until the day on which the third codicil was executed he knew nothing about the contents of the previous testamentary writings. Although he was not certain, his recollection of the circumstances led him to believe that he must have had knowledge of the contents of the second codicil (devising the interest of the testatrix in the subject property to the adoptive niece) at that time. He also recalled that the testatrix related to him the changes she wanted made in her last will and testament and that he dictated the third codicil to a secretary in the presence of the testatrix. It is not disputed that the testatrix knew exactly what she wanted to do and it is conceded that the draftsman was a capable and experienced attorney.

While the testatrix, by the first item of the third codicil, revoked the second item of her last will and testament (bequeathing her personal and household effects to the natural niece) and

substituted the adoptive niece as the donee of such personal and household effects, she did not in terms revoke the first item of the second codicil by which her interest in the subject property had been devised to the adoptive niece.

That neither the testatrix nor the attorney had the devise in mind when the third codicil was drafted and executed is apparent from the words used to effectuate the substitution of one niece for the other as donee of the personal and household effects and the absence of words to bring about the revocation of the devise of the only real property the testatrix had. That the testatrix had no intention of revoking the devise is clearly demonstrated by the significant fact that the testatrix, in revoking the bequest of certain personal and household effects to the natural niece and, in substituting the adoptive niece *in place thereof* as the donee of such personal and household effects, carefully excepted the articles specifically described and bequeathed to others in the last will and testament *or the codicils thereto,* but made no mention of the interest of the testatrix in the real property devised to the adoptive niece by the second codicil; and then, besides ratifying and confirming the provisions of the last will and testament as modified by the first and third codicils, also ratified and confirmed the second codicil without excepting the devise of her interest in the real property to the adoptive niece.

It is also important to observe that the testatrix did not consistently use the words "last will and testament" as meaning both the original will and a codicil or codicils. On the one hand, the reference to the last will and testament in the publishing clause, the ratification clause and the attestation clause of the third codicil was to the testamentary writing executed May 23, 1955 only. On the other hand, the testatrix referred to the same testamentary writing in the first item of the third codicil (substituting the adoptive niece for the natural niece as the donee of the personal and household effects) without any mention of the fact that the second item of the last will and testament had been enlarged by the first item of the second codicil (devising the interest of the testatrix in her home to the adoptive niece). Likewise, in the second item of the third codicil, the testatrix modified subparagraph (a) of the third item of the last will and

testament by increasing a bequest to a friend without referring to the fact that the last will and testament had been previously modified in both the first and second codicils, when in the second codicil, executed less than three months before, the testatrix, in modifying the last will and testatment, stated that the third item of the original will had been modified by the first codicil. Moreover, if the testatrix had actually changed her mind with respect to the disposition of her interest in the only real property she owned, it is not likely that her capable and experienced scrivener would have overlooked providing for the specific disposition of the one-half interest instead of using the words he did to express the intention of the testatrix, which at most permit only an inference that the words "last will and testament" were meant to include the devise made by the second codicil.

In addition to these manifestations of intention gathered from the four corners of the will as a whole, the provisions thereof clearly indicate a progressive intention to prefer the adoptive niece in some respects over the relatives and friends rather than an intention to take away anything that had been previously given to her. Not to the point of depriving the natural niece and the grandnephews of the bulk of the estate which she wanted them to have, in order to provide for the adoptive niece, but certainly to the extent of providing the latter a furnished home in which to live, if she wanted to, after the death of the testatrix. By the original will, the testatrix, other than providing that her executors were to consult the adoptive niece with respect to the funeral arrangements, bequeathed her only $500. By the first codicil, the testatrix bequeathed the adoptive niece all cut glass and china and certain other specified household effects. By the second codicil, the testatrix not only devised the one-half interest in the home that she had retained when she granted the adoptive niece the other one-half interest in fee, but, in bequeathing the cemetery lot in trust, further provided that no interments, other than those of herself and the adoptive niece, should be permitted therein. And, by the third codicil, the testatrix bequeathed to the adoptive niece all of the personal and household effects she had previously bequeathed to her natural niece by the second item of the will. Moreover,

the record further shows that sometime before her death, apparently during her last illness, the testatrix had given her adoptive niece a power of attorney.

In my opinion, the manifestations of intention expressed in the testamentary writings, coupled with the evident intention of the testatrix to prefer the adoptive niece in a manner somewhat different from other beneficiaries, was more than enough to so interpret the will and codicils as to preclude a finding that the testatrix intended to revoke the devise of her interest in the home to the adoptive niece. On this point, the will as a whole is as susceptible of an interpretation that the devise was not revoked as it was that there was a revocation of it. Moreover, there was no reason why the second and third codicils should not have been reconciled, as would be done with a will and a codicil, where, as here, the two codicils are not inconsistent and the subsequently executed one does not expressly revoke the first. See *Wiesenfeld v. Rosenfeld*, 170 Md. 63, 183 Atl. 250 (1936) ; *Thomas v. Safe Deposit & Trust Co.*, 73 Md. 451, 21 Atl. 367 (1891). If the intent of the testatrix was free from doubt (as it seems to me it was), the devise should be given effect, and if there was doubt as to the intent, extrinsic evidence was admissible to clarify the intention. *Shelladky, Inc. v. Herlihy*, 236 Md. 461, 204 A. 2d 504 (1964) ; *Lee v. Estate of Davis*, 226 Md. 416, 174 A. 2d 79 (1961).

The suggestion at the outset of this dissent that the majority had stated their theory of the effect of the words used by the testatrix to cancel a bequest of personal property rather than her motive or reason for limiting the language she used for that purpose, was based, of course, on my belief that what the majority did, in spite of their disclaimer that a doubt existed as to the meaning of the revocatory words, was to invoke a rule of construction instead of first interpreting the will (with or without resorting to extrinsic evidence) in contravention of the holdings of *Davis* (235 Md.) and *Judik* (184 Md.), both *supra*. The majority by the expedient of declaring that the use of the words "last will and testament" in the *first item of the third codicil* expressly revoked the *second item of the will as enlarged* by the *first item of the second codicil;* that there was no doubt as to the meaning of the revocation; and that any other con-

clusion would be contrary to the established principles of testamentary construction, held that the "intention of the testatrix was expressed in apt and certain terms." No authority was cited for the propositions of law assumed by them and none has been found by me. While it was said in *Syfer v. Dolby,* 182 Md. 139, 32 A. 2d 529 (1943),[2] that the word "will" in the statute comprehends a codicil and that a second codicil which is so inconsistent with the first one that the two could not stand together would be tantamount to an express revocation of the first, it was also said that a subsequent codicil does not revoke a prior codicil in the absence of an express revocation to that effect.

Furthermore, the general rule is that the revocation of a clear devise (as was the case here) requires an intention to revoke as clear as the devise. Miller, *Construction of Wills,* § 62. And see *Johns Hopkins Univ. v. Pinckney,* 55 Md. 365 (1881). It is also important to observe that words having a particular legal sense (such as "revoke") should be given a meaning commensurate with the context in which they are used when, as here, the technical import of such words might defeat the manifest intention of the testatrix. *Albert v. Albert,* 68 Md. 352, 12 Atl. 11 (1888).

If the meaning of the revocation is ambiguous or otherwise doubtful (as the majority necessarily had to presume in order to invoke the rule of construction they applied in reaching their decision), then the proffered extrinsic testimony should have been considered in order to determine whether or not the testatrix intended to revoke the devise. Had this been done, there would be little room for doubt as to the intention of the testatrix.

The decree in my opinion should be reversed. PRESCOTT, C. J., and SYBERT, J., concur.

---

2. See also Code (1964 Cum. Supp.), Art. 93, § 351.